[No. 34717.   Department One.   November 28, 1958.]

THE STATE OF WASHINGTON, *Petitioner and Relator*, v. BASIN
DEVELOPMENT AND SALES CO., INC. *et al., Respondents,*
THE SUPERIOR COURT FOR GRANT COUNTY, B. J.
McLEAN, *Judge, Respondent.*[1]

[1]Reported in 332 P. (2d) 245.

*The Attorney General, Douglas Hartwich* and *Thomas J. Greenan, Assistants,* for relator.

*Ries & Kenison,* for respondents.

HILL, C. J.—This is a condemnation action by which the state of Washington seeks to acquire certain lands located within Westlake, Grant county, for the improvement of primary state highway 18. As reconstructed in that area, it will be a four-lane, limited-access highway, with frontage roads on both sides and parallel to it. At the western end of Westlake an interchange will be constructed, with oiled roads, which are referred to as ramps, running at right angles to the main highway and connecting with the frontage roads.

The two tracts involved in this review face each other across primary state highway 18, and will be diminished as this highway is widened and frontage roads are added. They will also be encroached upon along their respective western boundaries by the ramp roads that will be built as part of the interchange. An order adjudicating public use was entered, and a jury trial was held to determine the just compensation to be paid for the taking of a portion of these tracts and the damages to the remainder.

At the trial the state introduced into evidence its construction plans and also a location map showing the tracts in question along with the proposed highway extension, frontage roads, and interchange to be built thereupon. The state presented as a witness an engineer for the department of highways who testified concerning the state's construction plans. He particularly testified that there would be no limitations on access between the interchange ramps and the west boundaries of the respective properties. The state's counsel stipulated in open court, as is the custom in these cases, that the state would be bound to construct its highway, as concerns these properties, in accord with the construction plans that it had placed in evidence.

Upon the basis of the engineer's testimony, two appraisal witnesses for the state testified that the access thus granted to the interchange ramps would benefit the properties in question by opening up portions thereof to residential development. On this basis the state's counsel argued, successfully it would appear, that the benefits granted to these properties by the increased access would offset in all or in part any loss in value caused by the encroachment proposed in the highway construction plans. The jury returned a verdict in the sum of one thousand, one hundred and twenty dollars as to one piece of property, and in the sum of no dollars as to the other.

Two weeks later a trial was held concerning the condemnation of other nearby properties for the same highway project. The same attorneys were present, the same construction plans and location map were placed in evidence, and the same engineer again testified for the state. On cross-examination it was established that certain "X's" on the construction plans and location map represented a four-strand, barbed wire fence that the state intended to construct. It could then be seen that such a barbed wire fence was also to be built between the interchange ramps and the respective west boundaries of the tracts with which we are here concerned. The engineer's testimony upon the earlier trial had thus been inconsistent with the construction plans in this respect; a fact which neither counsel had noticed at that time.

A motion for new trial was then filed concerning the tracts here in issue. The property owner urged as newly discovered evidence the fact that the state's plans called for the construction of the barbed wire fence. This new evidence, it was urged, destroyed the benefits testified to by the state's witnesses, and would probably increase the size of the verdicts. The state's counsel, in an attempt to amend the plans to match the testimony that had been given concerning them, filed a stipulation that the barbed wire fences in question

" . . . will not be constructed, and the owners of the adjoining properties shall have unhampered access to the

ramps of the interchange exactly as testified to at the time of the trial."

The trial court refused to accept the state's stipulation, on the grounds that it was too late to stipulate after the verdicts had been rendered and that the state was bound to construct the highway in conformity with its maps and plans. An order was entered, granting a new trial on the ground of newly discovered evidence, and the state secured a writ of certiorari from this court to review that order.

The property owner contends that the state is bound, by rule of law and by stipulation of counsel entered in open court, to build according to the construction plans it presented at the trial, and that the state's subsequent stipulation, inconsistent with the plans it had presented, comes too late and cannot change those plans.

Sufficient construction plans must be presented by the condemnor so that the extent of loss to the property owner can be understood and translated into monetary damages. If, after the award is made to the property owner, the condemnor deviates from its plans in such a way as to cause a further loss of property value, this constitutes another condemnation for which just compensation must again be assessed. Art. I, § 16, Washington state constitution; *Oregon R. & Nav. Co. v. Owsley* (1887), 3 Wash. Terr. 38, 13 Pac. 186. The rule that gives binding effect to the condemnor's construction plans is merely a restatement of these principles; and the state's stipulation at trial that it would be so bound was merely a recognition of this rule as it exists.

Our decisions have recognized the right of the condemnor to stipulate in mitigation of damages. *Tacoma Eastern R. Co. v. Smithgall* (1910), 58 Wash. 445, 451, 108 Pac. 1091, 1094, held that

" . . . cases will often arise where an unanticipated claim for damages interposed by the landowner may be lessened or entirely obviated by a stipulation or waiver on the part of the condemning party. The law does not favor the taking or damaging of property for a public use beyond the necessities of the case, and if damages may be avoided

by a waiver or stipulation definite and certain in its terms, which will fully protect the rights of all parties concerned, there is no reason why such a stipulation should not be received and acted upon. . . ."

See, also, *State ex rel. Eastvold v. Superior Court* (1956), 48 Wn. (2d) 417, 294 P. (2d) 418. Such "stipulations" are unilateral; they are a means by which the taking or damaging of private property can be kept to a necessary minimum in condemnation proceedings. Acceptance of the property owner's contention would, in effect, make such stipulations in mitigation of damages unavailable. Neither policy nor precedent warrant such a result.

█ In the present case the stipulation was filed when the trial court heard argument upon the motion for a new trial. The case had been tried without mention of the barbed wire fence, and it would appear (although we cannot know this for certain) that the jury did not examine the state's plans so carefully as to discover the small "X" marks which all counsel and the engineer had overlooked. Even if the jury had discovered this evidence of the proposed fence, the state's stipulation that the fence would not be built could benefit only the property owner who is the respondent here. The trial court was, therefore, in error in refusing to accept the state's stipulation.

█ The state's stipulation would change the construction plans to conform to the proof given of them, and would make the newly discovered evidence unavailable upon retrial. Since there remains no newly discovered evidence which would probably change the result should a new trial be held, the trial court erred in granting the new trial. *Skov v. MacKenzie-Richardson, Inc.* (1956), 48 Wn. (2d) 710, 296 P. (2d) 521; *Nelson v. Placanica* (1949), 33 Wn. (2d) 523, 206 P. (2d) 296; *Quackenbush v. Slate* (1942), 12 Wn. (2d) 201, 121 P. (2d) 331.

The order granting a new trial is set aside, and the trial court is directed to enter judgment on the verdicts.

MALLERY, FINLEY, ROSELLINI, and FOSTER, JJ., concur.