[No. 35703. Department Two. December 7, 1961.]

ED FEUERBORN *et al.*, *Appellants*, v. THE STATE OF WASHINGTON, *et al.*, *Respondents.**

*Reported in 367 P. (2d) 143.

 

*Don Miles* and *Newell Smith*, for appellants.

*The Attorney General* and *John C. O'Rourke, Assistant,* for respondents.

DONWORTH, J.—This is an appeal from a summary judgment of dismissal of appellants' claim against the state for damages under Art. 1, § 16, of the state constitution. The action was brought in Thurston County Superior Court, appellants alleging that the compensation awarded in a prior condemnation action in Grant County was based upon certain highway construction plans, and that they were entitled to further damages because of a later change in those plans. At the close of evidence, the jury was dismissed, the court made certain findings of fact and conclusions of law, and entered a summary judgment dismissing the complaint with prejudice. The case came to this court on an agreed statement of facts.

Appellants are owners of Farm Unit 64, Block 76, of the Columbia Basin Project, Grant County, Washington. This tract lies in a corner formed by the southerly right of way line of state primary highway No. 18 and the easterly right of way line of county road ONW. This county road originally intersected the highway at a right angle and afforded access to and from each road without restriction. On April 30, 1958, the state commenced a condemnation action in Grant County to acquire certain property and property rights from appellants with regard to this tract. The proceeding was undertaken pursuant to, and based upon, a highway department plan entitled "Primary State Highway No. 18, Burke Jct. to Moses Lake, Plan Showing Access," which plan was admitted in evidence at the Grant County trial, and the judgment thereafter was entered awarding damages based upon it.

That plan "established" (according to the agreed statement of facts), *inter alia*, that, in the future, county road ONW would intersect with state primary highway No. 18 by eastbound on-and-off connections, substantially level with the highway. Under the general purpose of the plan, the highway was to be converted into a limited access highway from which westbound travelers, including appellants, would no longer be able to turn left onto the county road. In addition, left turns from the county road onto the highway would not be allowed. Nevertheless, if the state had carried out its plan to build an eastbound on-and-off connection, right turns onto county road ONW would be permitted from the eastbound lane of the highway. Also, right turns would be permitted from the county road onto the eastbound lane of the highway.

The jury in the Grant County case considered this plan in determining the amount of compensation to be awarded appellants. Under judgment entered therein May 21, 1958, the following property and property rights of appellants were taken by the state: A parcel of land in the northwest corner of appellants' property which abutted the intersection of county road ONW and the right of way of state primary highway No. 18, consisting of approximately 1.6 acres,

"TOGETHER WITH all rights of ingress and egress (including all existing, future or potential easements of access, light, view and air) to, from and between Primary State Highway No. 18, Burke Jct. to Moses Lake and the remainder of said Farm Unit 64-1 and 64-2; EXCEPT that there shall be reasonable access to the frontage road to be constructed in the future along the Southerly side of this highway; however, until the frontage road is constructed the abutting owners will have a temporary right of access to the highway."

About four months later, the State Highway Commission adopted a new design standard for the interstate highway system within the state of Washington. Pursuant to this standard, the commission adopted its Resolution No. 759 on January 20, 1959. This resolution revised the plan which

was before the jury in the condemnation trial by eliminating the future eastbound on-and-off connections to county road ONW. Under this revised plan, the county road is to connect only with the frontage road and afford access to the highway only at the two interchanges to be constructed one and one half miles to the east and three fourths of a mile to the west of appellants' property.

Because of the revision of the access plan, this action for damages caused by closure of the intersection was commenced by appellants in Thurston County. The trial court, in its conclusion of law, found:

"That the damages caused by the elimination of the future east bound on and off connection from Primary State Highway No. 18 to County Road ONW are not compensable."

Certain other matters concerning temporary access were provided for in the judgment, but this appeal is from only that part of the judgment which dismissed appellants' complaint for damages.

The principal issue in this case is: Can a condemnor change its access plans (after a judgment has been entered in a condemnation case in which such plans are submitted as evidence) in such a manner as to further damage the condemnees' property without payment of compensation therefor? The trial court answered the question in the affirmative. We hold that the answer must be in the negative.

 In the Grant County condemnation proceeding, appellants were paid for the taking of their right of direct access to the state highway as provided in the original plan. Their right to such compensation is not affected (except in the amount thereof) by the construction of a frontage road which will provide access to the highway. *McMoran v. State*, 55 Wn. (2d) 37, 345 P. (2d) 598 (1959). In the original condemnation proceeding, the state presented plans which mitigated the damages fixed by the jury. This the state had a right to do. *State v. Ward*, 41 Wn. (2d) 794, 252 P. (2d) 279 (1953). However, when the state elects to have the issue of damages determined in relation to the specific plans and evidence submitted

by it, the state is bound by such plans and evidence. *State v. Basin Development & Sales Co.*, 53 Wn. (2d) 201, 332 P. (2d) 245 (1958).

█ So, if the state deviates from the plans which it had submitted to the jury in the original condemnation proceeding, the issue of damages is thereby reopened. *State v. Basin Development & Sales Co., supra.* The court said:

"Sufficient construction plans must be presented by the condemnor so that the extent of loss to the property owner can be understood and translated into monetary damages. If, after the award is made to the property owner, the condemnor deviates from its plans in such a way as to cause a further loss of property value, this constitutes another condemnation for which just compensation must again be assessed. Art. I, § 16, Washington state constitution; *Oregon R. & Nav. Co. v. Owsley* (1887), 3 Wash. Terr. 38, 13 Pac. 186. The rule that gives binding effect to the condemnor's construction plans is merely a restatement of these principles; and the state's stipulation at trial that it would be so bound was merely a recognition of this rule as it exists."

See, also, *Spokane v. Colby*, 16 Wash. 610, 48 Pac. 248 (1897), and *Hinckley v. Seattle,* 74 Wash. 101, 132 Pac. 855 (1913). The measure of damages is the difference between (1) the amount of compensation that was awarded in the Grant County judgment for the taking of the right of direct access to the highway when plans to construct an eastbound on-and-off ramp adjacent to the corner of appellants' property were in evidence, and (2) the compensation to which they would have been entitled had the present construction plans been placed in evidence in the condemnation proceeding. In other words, the measure of damages is the difference between the amount of damage to the condemnees' property under the original plan and under the later plans.

█ Under this view, we need not consider appellants' arguments pertaining to special damage and to damage as an abutter to the closed intersection. Such arguments would have been pertinent in an original proceeding, but here there has already been a judgment entered in the

prior condemnation proceeding awarding damages for an acknowledged taking and damaging of appellants' property. Moreover, there is no need to decide whether appellants would have any right to damages for the closure of the intersection if the original plans had *not* been submitted in evidence. Appellants in this case are simply seeking compensation for additional damage caused by the state's deviation from plans it submitted in evidence on the question of damages at the earlier trial, which plans tended to mitigate the damages and presumably resulted in a reduced award to appellants. Such damages are compensable, not because of any theory of a taking of a property right in an abutter by the closure of an intersection, but because the state is bound by the plans it submitted on the issue of damages resulting from the condemnation of property rights, and because, under Art. 1, § 16, of our constitution, there is a remedy for a material deviation from those plans which results in greater damage to the property owner than was occasioned by the original plans.

Under the same reasoning, the major arguments of the respondent fail because they are inapplicable to this case.

First, respondent contends that there is no right to compensation because the closure of the intersection is an exercise of the police power. Cited in support of this proposition are *State v. Fox*, 53 Wn. (2d) 216, 332 P. (2d) 943 (1958), and *Walker v. State*, 48 Wn. (2d) 587, 295 P. (2d) 328 (1956), neither of which involved a change in access plans. The second argument of respondent is based on RCW 47.52.041, which reads as follows:

"No person, firm or corporation, private or municipal, shall have any claim against the state, city or county by reason of the closing of such streets, roads or highways as long as access still exists or is provided to such property abutting upon the closed streets, roads or highways. Circuity of travel shall not be a compensable item of damage."

Respondent argues that the above statute applies to the facts of this case, rendering any damage uncompensable, and further supporting the "police power" argument.

Assuming, *arguendo*, that either of these arguments had

merit regarding the closed intersection in this case, it is too late to raise them now. If respondent's arguments were correct, the plan to leave the intersection open should never have been placed before the jury in mitigation of damages in the condemnation suit, but that case is final now, and the state is bound by what the jury considered. The construction plan provided mitigating features as against an item of compensable taking or damage, that is, as against some property right within the protection of the Washington State Constitution, Art. 1, § 16. If the state had the right to change the access plans in such a manner as to further damage appellants' property for public use, and such damage could be held to be *damnum absque injuria* under the police power, the constitutional provision referred to would be bereft of meaning. *Cf. Kincaid v. Seattle,* 74 Wash. 617, 134 Pac. 504, 135 Pac. 820 (1913). The state received the benefit of the original plans admitted in evidence, and it cannot now repudiate them.

█ Finally, respondent contends that the judgment in the condemnation action reserved appellants no right in the intersection of the county road and the highway, and therefore the state is not bound by evidence which it submitted on the point. The short answer to that argument is that this action is not based on a taking of a property right which was expressly reserved in the judgment, nor is it necessary to base the action on an express reservation. The access plans constituted *evidence* as to the amount of damage resulting from the taking, and their submission raised an undertaking on the part of the state.

In *Spokane v. Colby, supra,* certain land was condemned for the purpose of laying a pipeline. Later, the condemnor decided to erect telephone poles on the land taken. It was held that the condemnee was entitled to further compensation for the additional burden imposed. In that case, the condemnee's right did not depend on incorporation, in the prior judgment, of an express prohibition against the erection of telephone poles in the condemned land. The case at bar is similar in nature. The issue of *damages* resulting from an *earlier taking* has simply been reopened by the

state's deviation from its plans which had been introduced in evidence in mitigation of damages, and by which the state is now bound. Although the plans "may be appropriately referred to in the final decree of judgment," *State ex rel. Union Lbr. Co. v. Superior Court,* 70 Wash. 541, 127 Pac. 109 (1912), failure to make such a reference will neither release the state from its "stipulation" (*In re Mercer Street, Seattle,* 55 Wash. 116, 104 Pac. 133 (1909)) nor bar the condemnees' remedy against the state. The judgment in a condemnation proceeding specifies what is taken by the condemnor, and the amount of compensation to be paid for it. The judgment does not have to recite all of the evidence which was used to determine the amount of compensation, and the state is no less bound by the evidence it presented on that issue than if the judgment had contained such a recitation.

There is a substantial difference between the two plans which we have here considered. The plan which is to be carried out is more onerous than the one which the state submitted in evidence in the condemnation proceeding. If the taking of direct access rights to the highway resulted in greater damage to appellants under the present plan than appellants were compensated for in the first action, then appellants are entitled to compensation for the increase in damages. In other words, appellants are entitled to show that a feature of the construction plans which was previously allowed to mitigate damages has been taken away by Resolution No. 759. Appellants are now entitled to recover sufficient compensation so that, combined with the recovery from the condemnation proceeding, they will have received a total amount of damages equal to the amount they would have received had the "mitigating feature" of the construction plans never been put in evidence.

The trial court erred in granting respondent's motion for a summary judgment and in entering judgment dismissing appellants' action with prejudice. The judgment of the trial court is reversed, and the case is remanded for the entry of a judgment for liability only and the granting of

a new trial for ascertainment of the just compensation resulting from the change of plan described in Resolution No. 759.

FINLEY, C. J., MALLERY, OTT, and HUNTER, JJ., concur.