[No. 37773. Department Two. February 3, 1966.]

*In the Matter of the Petition of the* MUNICIPALITY OF METROPOLITAN SEATTLE.

THE MUNICIPALITY OF METROPOLITAN SEATTLE, *Respondent,* v. KENMORE PROPERTIES, INC., *Appellant.*[*]

[*]Reported in 410 P.2d 790.

Michael R. Donovan, for appellant.

*Preston, Thorgrimson, Horowitz, Starin & Ellis* and *Gordon G. Conger,* for respondent.

WARD, J.†—A property owner, Kenmore Properties, Inc., appeals from a judgment based upon an award made to it by a jury in eminent domain proceedings, as compensation for a part of its property taken and damaged for public use by the respondent, the Municipality of Metropolitan Seattle, herein called Metro. The respondent is a municipal corporation created under the Laws of 1957, ch. 213, RCW 35.58, ". . . to provide for the people of the populous metropolitan areas in the state the means of obtaining essential services not adequately provided by existing agencies of local government. . . ." including those arising in connection with garbage and sewage disposal. By RCW 35.58.320, Metro is granted the right of eminent domain to be exercised generally in the same manner and by the same procedure as is or may be provided by law for cities of the first class. Such procedure is set out in detail in RCW 8.12.

Metro, pursuant to such statutory powers, took from appellant, Kenmore Properties, Inc., herein called Kenmore, through eminent domain proceedings, a permanent easement for an underground sewer line, which is more particularly described in the stipulation set out in footnote 1. This permanent easement was 15 feet wide across the tract of land owned by Kenmore. Metro also took what is referred to as a temporary easement across Kenmore's property granting Metro the use of additional 30-foot strips on each side of the permanent easement for the period of construction of the sewer trunk line across the property.

The jury awarded $819 for the permanent easement, plus $15.40 a month for the temporary construction easement, to be paid only during the period of actual use.

---

†Judge Ward is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Appellant's three-facet assignment of error No. 1 is set out in its brief as follows:

The respondent produced no construction plans, was allowed to use stipulations[1] in lieu thereof and the Stipulation varied from the Order of Necessity.

The stipulation was supplemented by the engineer's map

[1]The so-called "stipulation" was unilaterally prepared by Metro during the course of the trial, was admitted in evidence as exhibit 12, and was incorporated verbatim in the judgment entered. It provides:

"The Municipality of Metropolitan Seattle, the petitioner herein, by and through its attorneys, Preston, Thorgrimson, Horowitz, Starin & Ellis, hereby stipulates that the extent and nature of the permanent easement and the temporary easement being condemned in the above-entitled action are more specifically delineated as follows:

"1. The permanent easement includes such property rights as are necessary for the installation, construction, operation, maintenance, removal, repair, replacement and use of a single underground sewer line. The sewer line shall have an inside diameter not larger than seven feet and the top of the sewer and connections thereto shall be at least sixteen feet below the now existing average level of the surface of the ground.

"2. No right is taken to locate a manhole on this property.

"3. No right is taken to permanently damage the surface of said land. If the surface of the land is disturbed, the Municipality shall be responsible to restore it, including replacement of top soil, restoration of existing fences and restoration of permitted improvements which may be constructed hereafter.

"4. The owner may not construct structures of a permanent nature within the permanent easement area. However, the owner may construct and install fences, landscaping, agricultural development, streets or roadways, whether unpaved or paved with blacktop or concrete, and may install any overhead or surface utility pipes or conduits, or any unroofed concrete slab, or structures of a temporary or movable nature within the permanent easement area.

"5. Upon 30 days' written notice to the Municipality, which notice shall include location and excavation plans, underground utility pipes or conduits may be installed and temporary or permanent excavations may be made in the permanent easement to within four feet of the top of the sewer line, as long as methods of excavation do not damage the sewer line.

"6. The temporary construction easement condemned herein may be used for any purpose connected with actual construction of the sewer line and shall commence and be in effect as of the date of the commencement of the construction activity thereon and shall terminate on the date of completion of the construction activity, but in no event shall it extend beyond December 31, 1965. Only during this period shall the Municipality have the right to occupy the area of the temporary construction easement."

showing the boundaries of the property included in both the permanent and the temporary taking, and also by an aerial photograph of the area, with the boundaries of Kenmore's property shown, with the portion affected by the condemnation marked thereon.

■ Kenmore's assignment of error is sufficient to question both the sufficiency and also the timeliness of the plan furnished by Metro disclosing the details of the property it was taking. Considering first the sufficiency of the plan, we have recognized the property owner's right to be adequately advised of the exact nature of the proposed taking, so that he may evaluate the resultant damage.

> Sufficient construction plans must be presented by the condemnor so that the extent of loss to the property owner can be understood and translated into monetary damages. *State v. Basin Dev. & Sales Co.*, 53 Wn. 2d 201, 204, 332 P.2d 245 (1958).

This does not, in all cases, require that the details of the plan to be furnished the owner must be identical with those set out in the plans and specifications to be used in securing bids for the construction work to be done on the premises. The test of sufficiency is not one of form but one of substance. The test of the sufficiency of the plans to be furnished the owner is whether or not such plans properly and adequately inform the owner of the details of the planned taking so that he and his witnesses may understand exactly the nature of the taking, and evaluate the owner's resultant damages.

In this case, Kenmore has failed to point out in what respect the details of the taking as disclosed by exhibit 12 and the supplemental maps, are insufficient to permit either an understanding or a valuation of its damage. Kenmore called no expert witness on values, but does not claim that its failure to do so was in any way related to the manner in which Metro made available its plans for the taking. For an underground structure such as the trunk sewer placed upon the appellant's property, we cannot say that the details disclosed by the so-called stipulation were insufficient for

the landowner's protection, nor that there was error in permitting its consideration by the jury.

The record shows that exhibit 12 was not completed in final form until the second day of the trial of the condemnation action. It would appear that this permitted the landowner no time to adequately prepare for trial. But the appellant failed to make such objection in the trial court, and on appeal makes no claim that the details of the taking were so belatedly disclosed to it as to have made it impossible to prepare the case for trial. Neither does the record disclose that the appellant had made any pretrial motions to secure details of the taking. The trial court can and will, if requested, protect the landowner's rights with respect to both the sufficiency and the timeliness of the details of the proposed taking. But conversely, this is a right of the landowner which he may waive. 6 Nichols, Eminent Domain § 24.64; 29A C. J. S. *Eminent Domain* § 226(d), at 1025.

Appellant complains of variance between the designation of the property to be taken as set out in the order adjudicating public use and the detailed designation of property rights taken as set out in the stipulation used during the trial of the case. The statute which details the steps and proceedings in eminent domain does not require that the final plans for construction be available at the time of hearing upon the petition for an adjudication of public use. RCW 8.12.060 requires that the petition contain "a reasonably accurate description of the lots, parcels of land and property which will be taken or damaged".

Under the statutory plan, there is, in most cases, no good reason why the detailed construction plans should be incorporated in the order which determines only that the use to be made of the property is really a public use. *State ex rel. Eastvold v. Superior Court,* 48 Wn.2d 417, 422, 294 P.2d 418 (1956).

What the appellant really complains of under this assignment is not the variance as such, but rather the mitigation of damages resulting therefrom. It complains that the dam-

ages are mitigated by the terms of the stipulation which (1) forever eliminates manholes on the property, (2) provides that no right is taken to permanently damage the surface of the land, (3) permits the owner to build fences and install landscaping and streets, and (4) upon 30 days' notice, permits installation of underground utilities within the area of the permanent easement. As the court said in *State v. Ward*, 41 Wn.2d 794, 252 P.2d 279 (1953), "This is mitigation, not substitution."

Neither statute nor decisional law of this state requires a condemnor to acquire a greater interest in property than that which is required for the use of the facilities for which condemnation is sought.

> *Tacoma Eastern R. R. v. Smithgall*, 58 Wash. 445, 451, 108 Pac. 1091, 1094 (1910), held that
> "The law does not favor the taking or damaging of property for a public use beyond the necessities of the case, and if damages may be avoided by a waiver or stipulation definite and certain in its terms, which will fully protect the rights of all parties concerned, there is no reason why such a stipulation should not be received and acted upon. . . ." *State v. Basin Dev. & Sales Co., supra,* at 204.

See, also, *Feuerborn v. State*, 59 Wn.2d 142, 367 P.2d 143 (1961); *State ex rel. Eastvold v. Superior Court, supra.*

■ Appellant's second assignment claims error in that the jury was permitted by the court to award damages for the taking of an easement only, rather than for the taking of the fee. In support of this assignment, appellant quotes 4 Nichols, Eminent Domain § 12.41(2), at 277 (3d ed. 1962):

> Nevertheless, when land is taken for such purposes as a highway or a railroad, which require a permanent and substantially exclusive occupation of the surface, the distinction between the taking of the fee and of the easement has no practical application in the determination of the compensation to be assessed for the land actually taken.

An examination of this authority, however, discloses that the author, in the same section, at 282, added:

> So, also, when an easement is taken which does not

require an exclusive occupation of the surface, such as the right to lay and maintain telegraph wires, or subterranean pipes, over or through private land, the owner is not entitled to recover the entire market value of the land subjected to the easement.

Metro's appraiser valued the permanent easement at 50 per cent of the value of the fee. Kenmore's witness valued the easement taken at 100 per cent of the fee. This is a matter upon which the opinion of witnesses may differ. The jury evaluates such divergent opinions. It is not a matter for the court to determine.

■ Appellant claims error in the failure of the court to strike the testimony of Metro's witnesses, claiming that the lack of construction plans provided no basis for their opinion on damages. We find the terms of the stipulation sufficiently definite to permit Metro's witness to formulate an opinion on damage. Appellant points out that the stipulation was not drafted until after Metro's witness had testified. This is true, but the record discloses that the stipulation was offered orally and its terms were considered by Metro's appraiser as a basis for his valuation.

Kenmore claims error in that the appraiser for Metro was permitted to testify with respect to the effect of a sewer easement upon the market value of other properties which he deemed comparable. The trial court, after permitting the appraisers to testify with respect to such other properties, ruled that such other properties were not sufficiently comparable to Kenmore's situation to warrant consideration by the jury, and, on motion of Kenmore, the court struck such testimony, including the exhibits relating to the property, and instructed the jury to disregard all such evidence.

■ Appellant claims that the prejudicial effect of such stricken evidence could not be removed from the jury's consideration, by the court's instruction.

In *State v. Gay*, 82 Wash. 423, 428, 144 Pac. 711 (1914), the court said:

The presumption in all cases is that the jury obeyed the instructions of the court, and this presumption must

prevail until it is overcome by some showing that the fact is otherwise.

No such showing was made in this case. See, also, *Ewer v. Johnson*, 44 Wn.2d 746, 270 P.2d 813 (1954); *DeHoney v. Gjarde*, 134 Wash. 647, 236 Pac. 290 (1925).

The appellant asserts that the Metro appraiser did not include in his valuation any allowance for severance damages. The respondent's witness was permitted to testify fully in support of its claim for severance damages and this issue was expressly submitted to the jury in instruction No. 5B, to which no exception was taken. The jury's award was more than three times the valuation fixed by Metro's appraiser for the permanent taking, and it cannot be said that the jury did not make an allowance for severance damages in its general verdict.

■ Appellant's third assignment asserts error in the refusal of the court to admit in evidence exhibit No. 16, a copy of the order of public use and necessity entered in the preliminary hearing. The appellant has failed to point out the materiality of such evidence, and we are unable to find any. On the jury trial in this state, the sole issue for the jury's determination in a condemnation case is the amount of just compensation to be awarded for the property taken or damaged. It is not concerned with the question before the court on the preliminary hearing which is limited to the determination by the court of three questions: (1) is the proposed use really a public use; (2) does the public interest require it; and (3) is the property sought necessary for such public use. *State ex rel. Lange v. Superior Court.*, 61 Wn.2d 153, 377 P.2d 425 (1963). If there be such variance between the property as described in the preliminary hearing and the property to be valued by the jury as to constitute a fatal variance, that constitutes a legal question which must be addressed to the court, not to the jury.

■ Appellant's fourth assignment of error is based on the limitation by the court of damage arising out of the temporary easement to the period of Metro's actual construction activities on the property. Appellant claims that

from the date of the judgment and decree of appropriation entered, January 19, 1964, until December 31, 1965, the terminal date for use of the construction easement, almost 2 years, it would be unable at any time to use the construction area by reason of the right of Metro to enter at any time and commence construction work.

A similar contention was made in *North Coast R. R. v. Aumiller*, 61 Wash. 271, 274, 112 Pac. 384 (1910). Judge Dunbar, speaking for the court, said:

> Conceding that the possession remains in the landowner, it cannot be said with any degree of reason that the value of his possession is not impaired by the judgment of damages. Possession is only one of the elements of value in land. The right to rent, the right to sell, the right to improve, are all valuable rights which must in the nature of things be affected by this relation. If so, it conclusively follows that he has not received full compensation.

The court in that case held, however, that the owner may be deemed compensated by the allowance of interest on the jury's award from the date of the verdict. See, also, *State ex rel. Willapa Elec. Co. v. Superior Court*, 196 Wash. 523, 527, 83 P.2d 742 (1938). The theory of just compensation during such period of delay is well stated in the concurring opinion of Judge Beals in *Public Util. Dist. No. 1 of Douglas Cy. v. Washington Water Power Co.*, 20 Wn.2d 384, 395, 147 P.2d 923 (1944):

> The property owner is certainly always damaged, to some extent at least, by the fact that a proceeding in condemnation has been instituted, and his beneficial use of the property is further impaired when the value of the land being condemned has been fixed by the verdict. From that time until the amount of the award is paid and possession of the property taken by the condemner, the value of the property to the owner is manifestly greatly lessened. The allowance of interest on the award covers, to a greater or less extent, such damages, which in most cases cannot be accurately determined. The allowance is not strictly *interest*, but represents a fair equivalent to the owner for the damage suffered.

We therefore hold that interest from the date the verdict was filed, computed upon the total award, including the

gross award for the temporary construction easement, until paid into court for the benefit of Kenmore, affords just compensation for any additional damages based on delay in the use of the temporary construction easement. The statutory provision with respect to interest on the award in eminent domain proceedings is not in conflict. RCW 8.28.040. The appellant makes no claim that it has not received the full amount of interest due.[2]

Assignment of error No. 5 is based on denial of motion for new trial, and, by this assignment, the appellant merely urges this court to again consider the matters heretofore discussed under the first four assignments of error.

The judgment is affirmed.

ROSELLINI, C. J., HILL, FINLEY, and WEAVER, JJ., concur.

---

[2]Const. art. 1, § 16, requires payment in advance for property taken or damaged. The judgment providing for payment of $15.40 per month during the construction period, if in conflict with the constitutional provision, is an error which we may not consider by reason of Rule on Appeal 43, RCW vol. 0.