[No. 454-2.    Division Two.    February 18, 1972.]

THE STATE OF WASHINGTON, *Respondent,* v. LAWRENCE M. WILSON *et al., Appellants.*

*Glenn E. Correa,* for appellants.

*Slade Gorton, Attorney General,* and *John J. Champagne, Assistant,* for respondent.

ARMSTRONG, J.—This is an action in eminent domain for the acquisition of a parcel of improved land for the construction of a state building in the city of Olympia. The land involved had been owned, used and occupied by the

appellants, Dr. and Mrs. Lawrence M. Wilson, for Dr. Wilson's medical office and for apartment rentals. The case comes to us on a short record containing only the testimony of Dr. Wilson.

The assignments of error limit our consideration to whether the trial court was in error in excluding the valuation testimony of the owner and in comments made to the jury with reference to excluding the owner's valuation figure. The only testimony stricken related to the valuation figure and the element of cost of replacement as a basis for that valuation figure. In striking that testimony the court held that the owner had determined the value of the property upon the application of an improper formula—the replacement cost of his medical office and apartments.

In 1947 Dr. Wilson purchased and remodeled a residence on Capitol Way. The existing building was converted into a physician's office and two apartments. He described in detail the remodeling and reconstruction of the building to convert it to suit his purposes. He had seven examining rooms, each of which was equipped with wash basins. His laboratory was equipped for the storage of vaccines and for the sterilization of instruments. The apartments rented for $200 a month. His ownership involved 130 feet on Capitol Way and was 80 feet deep. It was a convenient location to serve his state house clientele. Dr. Wilson testified that he had investigated the valuations of property of comparable value in the neighborhood.

An objection was sustained to an attempt to establish the cost of his investment in his medical office and apartment facility. Thereafter, the following statements, questions and answers occurred in direct examination:

THE COURT: You can ask him, Mr. Correa, as to what his opinion as a land owner is as to the value of his property and perhaps then determine if he knows how he arrived at this figure but at this time I will sustain the objection.

Q. (BY MR. CORREA) Then I will ask you, Doctor: Do you have an opinion as to the fair market value of

this property, of your property that is involved in this litigation, at the present time as of today?

A. Well, I am not an expert in this and I don't pretend to be. *All I can go by is some reasonable cost of replacement.* I understand the state does not, or the law does not permit cost of replacement.

Q. Well, do you have such an opinion?

A. I would say $75,000.

The following questions and answers appear in cross-examination:

By Mr. Champagne:

Q. Doctor Wilson, the $75,000 that you have testified to as the fair market value of the property, is that based upon what it would cost you to replace that and find a new location?

A. In that neighborhood, yes. That's what my findings were, trying to replace in that neighborhood. That was what I considered a comparable corner, comparable on the basis of the County Assessor's opinion of valuation, comparable valuation.

Q. Doctor, you arrived at the valuation of your property of $75,000, is that right, and I'm not quite sure that I understand how you arrived at that. I wonder if you could tell the court and the jury.

A. By considerable checking of properties in the area, by actually having estimates on what alterations would have to be done to give me an office to practice and what the cost of this would be, and the best figure I could arrive at was this $75,000.

The following redirect testimony was presented:

Q. Doctor Wilson, for the record, using the basis of your opinion as a property owner of the value of your property without any other consideration that is involved in this litigation other than what you feel the property itself is worth at fair market value, would you state at this time what is in your opinion the fair market value?

A. $75,000.

The following question and answer appear in recross-examination:

Q. In other words, you arrived at your estimate of the $75,000 by going out and finding what it would cost you to replace the facility that you have there?

A. Yes.

The trial court struck the valuation testimony of the owner and excluded it from the consideration of the jury because the owner based his valuation on replacement cost. In doing so the court relied upon the rule of *State v. Larson,* 54 Wn.2d 86, 338 P.2d 135 (1959), where the court stated at page 88:

> An owner of property may testify as to its value (without qualifying as an expert), upon the assumption that he is particularly familiar with it and, because of his ownership, knows of the uses for which it is particularly adaptable. *Weber v. West Seattle Land & Imp. Co.,* 188 Wash. 512, 63 P. (2d) 418 (1936). However, when, as here, the owner has not used his intimate experience with and knowledge of the land's uses as a basis for determining its fair market value, but has obviously determined it upon the application of an improper formula, his opinion fails to meet the test and, therefore, has no probative value.

In *Larson* the court held that it was improper to determine the fair market value of a gravel pit solely upon a formula of the number of yards of gravel in place, multiplied by the market value of gravel per yard—a clearly improper formula. In this case the owner of the property relied upon reproduction cost, which he termed cost of replacement. Replacement or reproduction cost of improvements on property, less depreciation, may be considered as such cost affects the fair market value of the property as a whole. The questions before us relate to whether the testimony of reproduction cost in this case is relevant, absent a showing of the depreciation of the property, and whether reproduction cost can be considered the sole determining factor in the determination of market value. Inherent in our consideration is the factual question of whether the owner did determine his market value figure solely upon replacement or reproduction cost.

■ We begin our considerations with the well recognized principle that under our constitution, private property may not be taken for public use without the payment of just compensation. Just compensation is the fair market value of the property, taking into consideration as part of the property such improvements as have become permanently affixed thereto, measured as of the date of trial. *Ham, Yearsley & Ryrie v. Northern Pac. Ry.*, 107 Wash. 378, 181 P. 898 (1919).

Fair market value is the amount of money which a well informed purchaser, willing but not obliged to buy the property would pay, and which a well informed seller, willing but not obliged to sell it would accept, taking into consideration all uses to which the property is adapted and might in reason be applied. *Donaldson v. Greenwood,* 40 Wn.2d 238, 242 P.2d 1038 (1952).

In determining fair market value in eminent domain cases, several factors have been frequently considered: sales of similar property in the market,[1] rental value of the property,[2] and the reproduction or replacement cost less depreciation.[3]

In appraising realty containing a business structure, expert real estate appraisers frequently use three approaches to the determination of fair market value:

1. The current cost of reproducing a property less depreciation from deterioration and functional and economic obsolescence.

2. The value which the property's net earning power will support, based upon a capitalization of net income.

3. The value indicated by recent sales of comparable properties in the market.

---

[1] *State v. Rowley,* 74 Wn.2d 328, 44 P.2d 695 (1968).

[2] 4 J. Sackman, Nichols on Eminent Domain § 12.3122 (rev. 3d ed. 1971); *Seattle & M. Ry. v. Roeder,* 30 Wash. 244, 70 P. 498 (1902); *State v. Hollis,* 93 Ariz. 200, 379 P.2d 750 (1963).

[3] 5 J. Sackman, Nichols on Eminent Domain § 20.2[1] (rev. 3d ed. 1971); *Sedro-Woolley v. Willard,* 71 Wash. 646, 129 P. 372 (1913).

American Institute of Real Estate Appraisers, The Appraisal of Real Estate 60 (5th ed. 1967).

Each of these approaches is but a method of analyzing data to arrive at the fair market value of the real property as a whole.

We next turn to an analysis of the owner's testimony to determine the basis of his valuation. Although he described the property in detail, its uses and rental value, it is obvious that he based his valuation on the sole factor of cost of replacement of his facility on another location in the neighborhood. At one point his counsel endeavored to rehabilitate him by asking him to restrict his consideration to his opinion as a property owner and he then valued the property at $75,000—the same valuation he had arrived at on a replacement basis. On recross-examination he stated that he had determined the valuation figure by determining the cost of replacing the facility he had. This was more than a mere inconsistency in the owner's testimony. Furthermore, it was not a case where the cross-examiner planted the idea of cost of reproduction or replacement as the sole basis for the owner's valuation because in his first answer on direct examination the owner stated, "All I can go by is some reasonable cost of replacement." Reading the questions and answers as a whole leaves no room for a difference of opinion in reasonable minds—the owner's valuation testimony was based upon cost of replacement alone.

We are, therefore, faced with the question of whether a determination of value may be placed solely upon reproduction cost of a business structure on another piece of property. We have no clearly definitive cases in this jurisdiction although reproduction or replacement value was considered in *Pierce County v. King*, 48 Wn.2d 43, 290 P.2d 462 (1955) and *Sedro-Woolley v. Willard*, 71 Wash. 646, 129 P. 372 (1913). Peripherally we have the statement in *State v. Larson, supra* that, "The just compensation to be paid to an owner of property, in a constitutional sense, is what an owner has lost at the time of condemnation, and

not what the condemner has gained." We have set forth in the footnote an analogous consideration and a text writer's concept of the reason for the adoption of the market value rule.[4]

■ Turning to the law of other jurisdictions, we find an excellent analysis of the use of the cost of reproduction method of ascertaining fair market value in *State v. Red Wing Laundry & Dry Cleaning Co.,* 253 Minn. 570, 93 N.W.2d 206 (1968). In that jurisdiction, as in ours, the proper measure of just compensation is the value of the land with the buildings upon it. In making that determination any evidence is admissible which legitimately bears on the market value of the property. A well informed purchaser generally would take reproduction cost less depreciation into consideration in arriving at a price he would be willing to pay for the property. Clearly, this factor would be of greater usefulness in some cases than in others. Reproduction cost becomes a more useful and necessary factor to consider when the structure on the property is adaptable to a special use. While we do not have before us a complete

---

[4]In considering just compensation, the interest of the owner and the origin of the market value rule, the following statement is made in 1 L. Orgel, Valuation Under the Law of Eminent Domain § 46, 222, 223 (2d ed. 1953):

"Just compensation," say the courts of this country including the highest court, is a compensation sufficient to make good the loss of the owner. In the words of Mr. Justice Butler, the owner is "entitled to the full money equivalent of the property taken, and thereby to be put in as good a position pecuniarily as it would have occupied, if its property had not been taken." [*United States v. New River Collieries Co.,* 262 U.S. 341, 67 L. Ed. 1014, 43 S. Ct. 565 (1923)].

A corollary of this proposition would seem to be that, when property is taken, its value to the owner is the only strictly relevant value, and that market value is acceptable only to the extent that it may be taken as a rough, practical measure of value to the owner. Precisely this reason for the adoption of the market-value rule has been adduced by the courts.

In support of this rationale, Orgel cites *United States v. Chandler-Dunbar Water Power Co.,* 229 U.S. 53, 81, 57 L. Ed. 1063, 33 S. Ct. 667 (1913), where the court said:

The owner must be compensated for what is taken from him; but that is done when he is paid its fair market value for all available uses and purposes.

statement of facts, it would appear that the structure in question was devoted to and well adapted to the use of a medical clinic and apartments.

We adopt the majority rule that evidence of cost of reproduction of structures less depreciation may be introduced whenever the structures are well adapted to the land upon which they stand. The proper measure of just compensation is the value of the land with the buildings upon it, and the owner therefore receives nothing for the buildings unless they increase the market value of the land. The reproduction cost of the structure on another comparable parcel of realty is not the sole measure of compensation but it is a factor to be considered in determining fair market value of the property as a whole. When the cost of reproduction (or the original cost) is considered as an element in determining market value, a proper deduction must be made for depreciation. Depreciation is not limited to physical wear and tear but it includes economic and functional obsolescence. 4 J. Sackman, Nichols on Eminent Domain § 182.313 (rev. 3d ed. 1969); 5 J. Sackman, Nichols on Eminent Domain § 20.2[1] (rev. 3d ed. 1969); 2 L. Orgel, Valuation Under Eminent Domain § 190 (1953), *see State v. Red Wing Laundry & Dry Cleaning Co., supra.*

Although we do not have a situation here in which it has been established that there is no active market for the property, it must be recognized that there are properties that fit that category. If there is no active market for the subject property, depreciated reproduction cost is often the only practical method of evaluation of such property. Common but not exclusive examples are public buildings, churches and club houses. *State v. Waco Independent School Dist.,* 364 S.W.2d 263 (Tex. Civ. App. 1963); *Washington v. United States,* 214 F.2d 33 (9th Cir. 1954); *Fort Worth v. United States,* 188 F.2d 217 (5th Cir. 1951); *see United States v. Toronto, Hamilton & Buffalo Nav. Co.,* 338 U.S. 396, 94 L. Ed. 195, 70 S. Ct. 217 (1949); *see also State ex rel. Rippetoe v. Cheetham,* 17 Wash. 483, 49 P. 1072 (1897).

■ With these considerations in mind we shall consider the evidence of the owner of the property. The owner of real property has a right to testify as to the value of his property. The rationale behind this right is that one who has owned property is presumed to be sufficiently acquainted with its value and the value of surrounding lands to give an intelligent estimate of the value of his property. Because of this rationale no inquiry into knowledge is required to qualify the owner, although knowledge will affect the weight to be accorded his opinion. *Wicklund v. Allraum*, 122 Wash. 546, 211 P. 760 (1922); *Cunningham v. Tieton*, 60 Wn.2d 434, 374 P.2d 375 (1962); *Spring Valley Water-Works v. Drinkhouse*, 92 Cal. 528, 28 P. 681 (1891). In giving his opinion the owner is entitled to explain his valuation by relevant and competent methods of ascertaining value.

The owner, in the instant case, demonstrated that he had an exceptional knowledge of his property and he had prepared himself to ascertain the cost of reconstruction on a comparable lot. His estimate of valuation was not competent however, because (1) it was grounded solely upon reconstruction cost on a comparable lot, and (2) he did not consider depreciation of the building he had reconstructed 20 years ago.

We have considered the assignments of error relative to comments of the court and find that they were explanations of the court's ruling in excluding the valuation figure and the use of the reconstruction cost formula.

Judgment affirmed.

PETRIE, C.J., and PEARSON, J., concur.