[No. 2318-1. Division One. April 21, 1975.]

THE STATE OF WASHINGTON, *Appellant*, v. ALBERT SHERRILL *et al*, *Respondents*.

 

*Slade Gorton, Attorney General,* and *John T. Hurley* and *Eric B. Swanson, Assistants,* for appellant.

*Paul N. Luvera, Jr.,* and *G. Newell Smith,* for respondents.

SWANSON, J.—In this eminent domain proceeding commenced in March 1972, the State seeks to acquire 4.63 acres of property owned by respondents (hereinafter generally referred to as "the owner") in order to construct a so-called "diamond" interchange in Skagit County about 1 mile south of the city of Mount Vernon where Interstate 5 is intersected by Anderson Road. The jury returned a verdict awarding the property owner $46,300 as just compensation. The State appeals.

The trial of this action presented a complicated fact pattern involving an earlier acquisition by the State from a prior owner of part of the same tract of land here in question. This acquisition was necessary because of a 1955 state highway improvement plan ("1955 plan") which stood partially completed and abandoned at the time of the trial in the present action.

In general terms, the State's assignments of error focus upon rulings by the trial court which affected the "before" taking valuation basis of the subject property. First, at a pretrial hearing, the trial court ruled, in effect, that in determining the fair market value of the property before the acquisition, the jury should assume that the never-completed construction under the 1955 plan was completed; second, the trial court ruled as a matter of law that the "commercial" zoning classification of the subject property which existed at the time of trial should be considered to be part of the "before" situation and thereby, the State contends, foreclosed consideration of any other zoning classification

despite evidence that prior rezones from "residential" to "commercial" were granted because of the project for which the property was being taken; third, the court refused the State's proposed instruction on zoning. The State contends these rulings were erroneous, prejudicing its presentation of evidence and requiring a new trial.

### The Trial Court's Ruling On Valuation

At the pretrail hearing agreed upon by the parties to obtain a ruling from the trial judge as to the effect of the unfinished construction under the 1955 plan upon the valuation of the subject property in the "before" situation and, specifically, to determine whether the jury ought to consider the subject property as it existed in fact on the date of trial or whether they should assume all features of the 1955 plan to have been completed, the following undisputed factual chronology was presented: In the earlier condemnation proceeding, by a stipulated judgment and decree of appropriation entered November 19, 1956, the State acquired from the owner's predecessors, J. M. Sherrill and Nina Sherrill, 1.01 acres and all access rights of the abutting property to the right-of-way being taken except, as the judgment provided, "that the right of reasonable access shall be granted to that certain frontage service road to be constructed along the Easterly side of said highway . . ." This 1956 acquisition was necessary because of the 1955 plan which called for construction of a 4-lane limited access highway, designated Primary State Highway 1, and now known as Interstate 5, through Skagit County to bypass the city of Mount Vernon. The 1955 plan also directed construction of entrance and exit ramps on both sides of the highway at or near the Anderson Road intersection, but with no provision by overpass or otherwise for cross-traffic at Anderson Road. In addition, the 1955 plan included a frontage road on the east side of the highway to serve the abutting property which is the subject of the present action.

The State constructed the four lanes of highway, but after the passage of the federal Interstate Highways Act in

1956, Primary State Highway 1 was redesignated S.R. 5 (Interstate 5), and further implementation of the 1955 plan was abandoned in the sense that there was no further construction. Consequently, the exit and entrance ramps and frontage road at the Anderson Road intersection described in the 1955 plan were never built; however, unrestricted access to Interstate 5 at grade was available to the abutting property owners and traffic was permitted to cross Interstate 5 at grade at the Anderson Road intersection. On August 17, 1970, the Washington State Highway Commission adopted a plan to construct a diamond interchange at the Anderson Road intersection which required the acquisition of the subject property of 4.63 acres located in the southeast quadrant of the intersection, and thereby left the owner with 9.14 acres.

The State argued to the trial court that the valuation of the subject property in the "before" situation should be determined by consideration of the actual condition of the property on the date of trial, not what its condition would have been if the State had completed construction according to the 1955 plan. This contention was stated to the court as follows:

> The state's position is that we should consider the 1955 plan. We should know about its existence and we should know how it effects market value today and the value that should be considered. But we shouldn't consider something to be there that is not there and assuming it were built which it is not. There is a remedy for respondents if they are damaged and that issue is not before us.

The owner contended that the 1956 judgment and decree of appropriation agreed to by his predecessor gave him vested access rights to the highway and, because the 1956 judgment was predicated on the 1955 plan, the State was bound by all features of the plan and could not deviate from it. The owner persuaded the trial court that in appraising the subject property in the "before" situation, it must be assumed that the improvements provided for in the 1955 plan are complete, arguing that only if such an assumption is

made can the owner not only recover its alleged damages for the State's failure to complete the 1955 plan, but also receive just compensation for the subject property. The owner's counsel stated, "We assume it is built right today according to the 1955 plan which the state is bound by regardless of whether it is constructed or not. They are bound to do it." The trial court accepted the owner's argument and ruled that the State was bound by the 1955 plan. This pretrial ruling established the basis for appraising respondent's property before the acquisition and, in practical terms, it was interpreted to mean that the appraisers had to regard all features of the 1955 plan, including off and on ramps, frontage road, etc., as having been completed and in existence at the time of trial.

### The Proper Standard Of Valuation

On appeal, the State contends that the basis thus adopted by the trial court to appraise the subject property erroneously combines a statutory condemnation action with a claim for damages. The State argues that it was greatly prejudiced by the trial court's ruling which, in effect, made mandatory, in the appraisal of the fair market value of the subject property "before" taking, the assumption that all construction features of the 1955 plan were in fact complete —an assumption which all parties recognized to be a fiction. We agree.

The trial court erred in combining a claim for damages, based on the State's deviation or failure to complete the 1955 plan, with the determination of just compensation for the taking of the subject property in this statutory condemnation proceeding. To adopt one formula for determining both damages and just compensation is superficially appealing as a short-cut method of solving two problems at once, but unfortunately it does violence to the solution of both. Upon analysis, the error in so combining a damage claim with a determination of just compensation is apparent.

██ The general rule is that the proper measure of just compensation in an eminent domain proceeding, where a partial taking is involved, is the difference between the

fair market value of the entire property before the acquisition and the fair market value of the remainder after the acquisition measured as of the date of trial. WPI 150.06; *see In re Medina,* 69 Wn.2d 574, 418 P.2d 1020 (1966); *State v. Williams,* 68 Wn.2d 946, 416 P.2d 350 (1966); *State v. Wilson,* 6 Wn. App. 443, 493 P.2d 1252 (1972). Fair market value has been defined as the price which a "well-informed buyer" would pay to a "well-informed seller," where neither is obliged to enter into the transaction. *State v. Rowley,* 74 Wn.2d 328, 444 P.2d 695 (1968); *State v. Wilson, supra.* It is obvious that a well-informed buyer or seller would not assume that entrance and exit ramps and a frontage road were complete if, in fact, they were not; consequently, the price paid for the property would reflect only what exists in fact and not what is hypothetical.

■ Moreover, the existence of a plan, such as the 1955 plan involved here, would be known to the well-informed buyer and seller and the purchase price would reflect the plan's existence—including its apparent abandonment—as a factor affecting value. In the event there is a deviation from the plan which damages the property owner, such owner is not without a remedy. The applicable rule is stated as follows in 4A P. Nichols, *Eminent Domain* § 14.24 (3d rev. ed. Supp. 1974) at pages 14-131-37:

> The use to which the condemnor proposes to devote the property taken must be considered in ascertaining the damages to the remainder area. Where the condemnor limits itself to a particular plan of construction or to a specific use of the property acquired, damages to the remainder may be determined in the light of such limitation. Of course, if the condemnor thereafter deviates from such plan or use, a cause of action for additional compensation may accrue.

(Footnotes omitted.) The rule was recognized in this state in *State v. Basin Dev. & Sales Co.,* 53 Wn.2d 201, 204, 332 P.2d 245 (1958):

> Sufficient construction plans must be presented by the condemnor so that the extent of loss to the property

owner can be understood and translated into monetary damages. If, after the award is made to the property owner, the condemnor deviates from its plans in such a way as to cause a further loss of property value, this constitutes another condemnation for which just compensation must again be assessed.

(Citations omitted.) Significantly, the rule was reaffirmed in *Feuerborn v. State,* 59 Wn.2d 142, 367 P.2d 143 (1961), a case upon which both parties rely.

In *Feuerborn,* compensation in a prior condemnation action was awarded to owners of land abutting a state highway for the taking of direct access rights. In making its award, the jury considered certain construction plans offered by the State which mitigated the damages to the property owners. Four months later, the highway commission adopted a new design standard for highways and revised the plan considered by the jury in the prior action. Subsequently, the property owners brought suit in Thurston County against the State for damages on the theory that because the compensation awarded in the prior action in Grant County was based upon specific highway construction plans which were later changed to their detriment, they were entitled to additional damages. The trial court dismissed the complaint, but on appeal the Supreme Court reversed, stating at page 145:

In the Grant County condemnation proceeding, appellants were paid for the taking of their right of direct access to the state highway as provided in the original plan. Their right to such compensation is not affected (except in the amount thereof) by the construction of a frontage road which will provide access to the highway. *McMoran v. State,* 55 Wn. (2d) 37, 345 P. (2d) 598 (1959). In the original condemnation proceeding, the state presented plans which mitigated the damages fixed by the jury. This the state had a right to do. *State v. Ward,* 41 Wn. (2d) 794, 252 P. (2d) 279 (1953). However, when the state elects to have the issue of damages determined in relation to the specific plans and evidence submitted by it, the state is bound by such plans and evidence. *State v. Basin Development & Sales Co.,* [*supra*].

· So, if the state deviates from the plans which it had submitted to the jury in the original condemnation proceeding, the issue of damages is thereby reopened. *State v. Basin Development & Sales Co., supra.*

The *Feuerborn* court also determined at page 146 that the proper measure of damages in such a proceeding is "the difference between the amount of damage to the condemnees' property under the original plan and under the later plans."

Thus, if we assume in the case at bar, as the owner contends, that the 1956 judgment and decree of appropriation was based upon the 1955 plan which was never completed—and therefore the $1,500 paid in compensation to the owner's predecessors was less than what otherwise might have been awarded, or agreed to, because completion of the 1955 plan would have mitigated the damages by conferring benefits upon the remainder property—the question of damages in the earlier acquisition could be reopened. Assuming arguendo that the owner is entitled to assert a claim for damages[1] in addition to those granted to his predecessors in 1956 because of the failure of the State to honor

---

[1]The owner cites no case authority which suggests that he, as a subsequent property owner, has the right to assert a claim for damages caused by the failure of the State to live up to the agreement with his predecessors. Any such authority would appear to be contrary to the holding in *Seattle v. Fender*, 42 Wn.2d 213, 254 P.2d 470 (1953), that damages awarded to a property owner are personal to him and do not run with the land to a subsequent owner unless specifically provided for in a deed. *See also Monen v. State Dep't of Highways*, 33 Colo. App. 69, 515 P.2d 1246 (1973). It is stated in 30 C.J.S. *Eminent Domain* § 390 (1965) at page 461: "Ordinarily, a grantee or purchaser cannot sue for a taking or injury occurring prior to his acquisition of title, but he may sue for any new taking or injury." (Footnotes omitted.)

We also note that the State asserted throughout the present proceedings that the trial court was without jurisdiction to determine a claim for damages arising out of the State's failure to complete construction under the 1955 plan on the ground RCW 4.92.010 requires such an action to be brought in Thurston County; however, we decided in *Deaconess Hosp. v. State*, 10 Wn. App. 475, 518 P.2d 216 (1974), that such an inverse condemnation action may be brought in the county in which the property in question is situated.

the 1955 plan, the proper measure of damages would be as stated in *Feuerborn*, namely the difference between the amount of damages to the owner's property under the original plan (the 1955 plan) and that under the later plan (the 1955 plan, partially completed and abandoned).

No such remedy was pursued in the case at bar. Instead, the trial court by ruling that the 1955 plan should be considered as if it were completed, permitted the owner to combine his claim for damages arising out of the 1955 plan with his claim for just compensation in the present condemnation proceeding such that the formula presented through the testimony of the appraisal witnesses to the jury for the computation of damages was not proper for either claim. In urging us to sustain the trial court's judgment, the owner in effect proposes an extension of the principles announced in *State v. Basin Dev. & Sales Co.*, *supra*, and *Feuerborn v. State*, *supra*, by asserting that completion of the 1955 plan would have created a valuable site on his property for a service station or similar facility. In other words, the owner claims he is entitled to the enhancement in the value of his property which would have been made possible by completion of the 1955 plan, and therefore it was proper and necessary for the jury to assume such completion when appraising the value of the subject property in the "before" situation. As the State points out, however, the trial court's ruling to that effect created an artificial value for the owner's property which may have caused the jury to grant an award substantially in excess of any actual damages or compensation to which the owner may be entitled.

■ An argument similar to that advanced by the owner to the effect that the government is bound to insure that a property owner reaps the benefit of a prospective project, even if it cancels the project, was advanced in *Lechuga v. United States*, 395 F.2d 195 (5th Cir. 1968). The court responded to this argument by stating at page 196, "Such a suggestion is indefensible. Bubbles do burst, and the government should not be penalized for its decision not to

grant an inchoate bonanza." (Citations omitted.) We likewise reject the owner's contention that he is entitled to have his property appraised in the "before" situation in such a way as to take into account whatever enhancement in value completion of construction under the 1955 plan would have created. As we have indicated, the proper standard of appraisal is that which is based upon fair market value. *See* WPI 150.06; *In re Medina, supra; State v. Williams, supra; State v. Wilson, supra.* A well-informed buyer might pay a purchase price reflecting the existence of the 1955 plan, which was partially completed and apparently abandoned, but he would not pay a price based on the assumption that all construction set forth in the 1955 plan had been completed. *See State v. Rowley, supra; State v. Wilson, supra.* The owner is entitled to just compensation and he may be entitled to damages proven in a separate action, but he is not entitled to have a hypothetical windfall transformed into reality. *See Feuerborn v. State, supra; State v. Basin Dev. & Sales Co., supra.* A new trial must be ordered.

## THE TRIAL COURT'S RULINGS ON ZONING

To minimize the possibility of error on retrial, we deem it necessary to resolve the issues presented by the State's remaining assignments which are directed to the validity of certain rulings by the trial court relating to the zoning of the subject property. A brief resume of the zoning history of the property as it was presented at trial is helpful to an understanding of the issues raised.

In 1964, when the respondent Walton purchased the property, it was zoned either residential or agricultural. In 1967, Walton petitioned for a rezone to a commercial classification. The State presented evidence to the effect that the Skagit County Planning Department, in considering Walton's petition, obtained information from the State Highway Department about construction plans for the Anderson Road diamond interchange. David Hough, a Skagit County planning director, testified, "Generally, Mr. Walton discussed and brought out several newspaper articles relating

to the proposed interchange generally supporting his petition." Evidence indicated that the planning commission recommended to the county commissioners that the petition for rezone be granted because of the location of the property in relation to the proposed interchange. The Board of County Commissioners concurred with the planning commission and granted the rezone of 4 acres located in the northwest corner of the property.

In 1969, Walton filed a second rezone application seeking a rezone of the remaining portion of his property. Again, the planning commission recommended a rezone to commercial. Mr. Hough testified this recommendation was based upon the full diamond interchange, stating as follows:

Q From your work in the office from the two positions you have held as Assistant Planning Director in 1967, do you have an opinion in regard to whether or not the proposed interchange at Anderson Road was a major factor in this rezone? MR. LUVERA: I would make the same objection; it is the same question. THE COURT: Objection would be overruled; he may answer. A *I believe the record indicates that the basis, main basis, for rezoning was because of the major diamond interchange.*

(Italics ours.) On cross-examination, Mr. Hough acknowledged that the county commissioners considered various factors in addition to the proposed interchange in granting the rezone petition.

The State argued that the uncontroverted evidence indicates that the rezones resulted primarily from the project for which the property was being taken, and so such zoning could not be considered in valuing the subject property. In response to this argument, the court ruled:

I thought that we had this settled before this case arose, that is, before it was zoned commercial and I just don't see how the issue as to zoning pertains to now. It was zoned commercial in the before situation and certainly before the 1970 plan.

In assigning error to the trial court's ruling, the State complains that it was required to assume the land was

"commercial" and therefore could prove the value of the subject property only through testimony about comparable sales which were "commercial," rather than "residential." The State contends that the trial court thereby ruled as a matter of law on a factual issue by removing from the jury any issue as to whether the commercial zoning at trial was attributable to the project for which the property was being acquired. In this connection, the State also assigns error to the court's refusal to give its requested instruction which would have required the jury to disregard any effect on zoning caused by the project for which the property was being acquired,[2] relying primarily upon *State v. Kruger*, 77 Wn.2d 105, 459 P.2d 648 (1969), in which our state Supreme Court deemed it reversible error for the trial court to fail to give such an instruction where the jury must consider the probability of rezoning in establishing the value of property which is the subject of eminent domain proceedings. The owner essentially argues in response to the State's contentions that the rezones in question occurred prior to 1970 when the plan for the diamond interchange which necessitated the present condemnation proceeding was announced and, moreover, that there was no testimony that the rezones would not have been granted based upon the 1955 plan alone.

In *State v. Kruger, supra*, the court reaffirmed the exception to the rule generally applicable in condemnation proceedings to the effect that property must be evaluated only in terms of uses permitted under existing zoning regulations. The exception, as recognized in *State v. Motor Freight Terminals, Inc.*, 57 Wn.2d 442, 443, 357 P.2d 861 (1960), is:

[W]hen a particular use of the property, to which it is adapted, is prohibited or restricted by law, but there is a reasonable probability that the prohibition or restriction

[2]The State assigns error to the trial court's failure to give the following instruction on zoning, "You're to value the property in view of uses permitted under present zoning. You may not, however, consider any effect on zoning caused by the project for which the property is being acquired."

will be modified or removed in the near future, the effect of such probability upon the value of the property may be taken into consideration.

(Citations omitted.) This exception was limited in *State v. Kruger, supra,* to prohibit a jury from considering any rezone caused by the project for which the subject property is being acquired. The rule as stated in *Kruger,* at page 108, quoting from the *Motor Freight Terminals* case, is controlling inasmuch as it refers to an actual change in zoning as well as the probability of a rezone:

> The probability of rezoning *or even an actual change in zoning* which results from the fact that the project which is the basis for the taking was impending cannot be taken into account in valuing property in the condemnation proceeding.

(Italics ours.) Our review of the record reveals substantial evidence that the 1967 and 1969 rezones were granted because of the project for which the subject property is being taken, even though formal designation of the property to be acquired did not occur until 1970. Under such circumstances, the trial court erred in refusing the instruction requested by the State and in ruling as a matter of law that the subject property should be deemed to have been zoned commercial in the "before" taking situation.

The judgment is reversed, and the cause remanded for a new trial.

WILLIAMS, C.J., and FARRIS, J., concur.

Petition for rehearing denied June 30, 1975.

Review denied by Supreme Court November 5, 1975.