

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 0 4 2016

CHIEF JUSTICE



This opinion was filed for record
at _8:00 am_ on _August 4, 2014_

Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY, a regional transit
authority, d/b/a SOUND TRANSIT,

     Respondent,

  v.

AIRPORT INVESTMENT COMPANY, a
Washington corporation, d/b/a Hampton Inn,

     Petitioner,

  and

HORIZON AIR INDUSTRIES, INC., a
Washington corporation; IBEW 77
INTERNATIONAL BOULEVARD, LLC, a
Washington limited liability company;
JPMORGAN CHASE BANK, N.A., f/k/a
The Chase Manhattan Bank, as Trustee for
the Registered Holders of Prudential
Securities Financing Corporation Commercial
Mortgage Pass-Through Certificates, Series
199-C2; KING COUNTY; and ALL
UNKNOWN OWNERS and UNKNOWN
TENANTS,

     Defendants.

NO. 91653-5

EN BANC

Filed   AUG 0 4 2016

STEPHENS, J.—Central Puget Sound Regional Transit Authority (Sound Transit) condemned property owned by Airport Investment Company (AIC) in order to secure easements to construct and operate an elevated light rail. The parties could not agree on the amount of just compensation for the taking, so the matter proceeded to trial. AIC contends it is statutorily entitled to attorney fees because Sound Transit failed to make a valid settlement offer 30 days before trial. Specifically, AIC argues that the 30-day offer Sound Transit made did not reflect the reduced temporary construction easement it ultimately obtained, making the offer ineffective or resulting in a total abandonment of the condemnation. AIC also seeks a new trial, alleging the trial court erroneously allowed Sound Transit's counsel to question AIC's president, Sandra Oh, about the taking valuation of a nontestifying appraisal expert.

We affirm the Court of Appeals. A condemnee is entitled to attorney fees under RCW 8.25.070(1)(a) only "[i]f [the] condemnor fails to make any written offer in settlement" at least 30 days before trial. Sound Transit made a timely settlement offer, which was not rendered ineffective by subsequent revisions to reduce the impact of its temporary construction easement. AIC's evidentiary objection is also unavailing: the trial court properly admitted Oh's testimony under ER 801(d)(2) as an admission of a party opponent.

FACTS AND PROCEDURAL HISTORY

Sound Transit is a regional transit organization authorized to construct and operate a high-capacity electric light rail system (Light Rail). RCW 81.112.010;

-2-

Clerk's Papers (CP) at 1-2. Pursuant to its statutory authority to condemn real property to construct the Light Rail, Sound Transit sought easements over property owned by AIC. The property consists of approximately 112,626 square feet of land area and is developed with a 4-story, 130-room hotel constructed in 1988.

In the condemnation action, Sound Transit sought to take a portion of the property for a permanent guideway easement (PGE) to construct the Light Rail along the property's western boundary. It also sought a temporary construction easement (TCE), which afforded Sound Transit a nonexclusive, three-year time period to construct the Light Rail and encumbered up to 3,882 square feet of the property.[1] Except when Sound Transit required exclusive occupancy, the TCE afforded AIC the right to use the TCE area for any purpose that did not interfere with Sound Transit's construction activities.

In May 2012, Sound Transit sent AIC a valuation offer of $142,300 for both easements. This offer was based on an initial valuation by its appraiser of $79,825 for the PGE, $46,600 for the TCE, and $15,875 for improvements. Sound Transit advised AIC that it had the right to obtain its own appraisal at Sound Transit's expense. *Id.* AIC exercised this right, and its appraiser valued the easements at $485,000. AIC submitted its appraisal to Sound Transit in July 2012 in a letter expressing its belief that it was entitled to $485,000 for the easements. Suppl. Br. of

---

[1] The TCE area included a space Sound Transit's contractor would need only if the guideway column placement required the property's driveway to be relocated. AIC was concerned about the size of the TCE because it would reduce available parking at the hotel, eliminating approximately 25 parking spaces.

Resp't Sound Transit, App. A at 1. Rejecting AIC's valuation, Sound Transit asked AIC to reconsider its original offer.

On June 14, 2013, 30 days before trial, Sound Transit made a written settlement offer to AIC of $463,500. The offer was for both the PGE and the TCE, and was marked "FOR SETTLEMENT PURPOSES ONLY." CP at 1334. The offer provided that it "remain[ed] open until accepted, rejected, or until withdrawn by Sound Transit" and was "made subject to Sound Transit's reservation of its right to re-evaluate this offer and submit a revised 30-day offer if the pending trial date is continued." *Id.* The parties could not agree on the amount of just compensation due, and the matter proceeded to trial.

On July 1, 2013, Sound Transit informed AIC that it would change the configuration of the TCE because it no longer needed to relocate the property's driveway to construct the Light Rail.[2] That same day, Sound Transit provided AIC with an updated parcel map and updated right-of-way plan showing the change. The modification reduced the total TCE area by approximately 1,000 square feet. Suppl. Br. of Resp't Sound Transit at 3. These changes to the TCE were designed to ameliorate AIC's loss of business costs from the property's use as a parking lot. Notwithstanding the language in the TCE, Sound Transit communicated to AIC that

---

[2] Sound Transit alleges that when it had made the 30-day offer, the parties had already discussed Sound Transit's plan to reduce the TCE square footage and to use only a limited number of exclusive-use days to partially accommodate AIC's parking concerns.

its construction would require only sporadic use of the TCE area during the three-year period.[3] Sound Transit did not revoke or reduce its settlement offer despite the reduced easement.

AIC then filed a motion in limine, requesting that the trial court exclude any evidence that Sound Transit intended to use the TCE area for less than the entire three-year term. At oral argument on the motion, the trial court agreed with AIC that if Sound Transit had the right to exclusive use of the TCE area for the entire three-year term, it could not tell the jury that its actual use would be less. The trial court granted AIC's motion, "provided, however, this ruling . . . does not preclude [Sound Transit] from submitting a revised form of [TCE] providing for the actual time of use of the easement area." CP at 904.[4]

On the first day of trial, Sound Transit withdrew its 30-day settlement offer. With leave of the trial court, Sound Transit provided AIC with revised TCE language regarding time of use. This occurred after jury selection, but before opening statements. Although the revised TCE still provided a three-year easement term, it limited Sound Transit's exclusive use of the TCE to a maximum of 160 nonconsecutive days.

AIC also moved in limine to exclude evidence of its July 2012 valuation letter stating that it was entitled to $485,000 for the easements. Sound Transit responded

---

[3] AIC claimed that Sound Transit refused to commit to any altered term description at this time. Suppl. Br. by AIC at 3; Pet. for Review by AIC at 3-4.

[4] The trial court agreed with Sound Transit that as a matter of law, the lost income and consequential damages AIC claimed were not compensable.

that it had no objection to AIC's motion so long as Sound Transit's first appraisal would also be excluded on the grounds that both parties' appraisals were for purposes of settlement negotiations. Finding that neither initial appraisal letter constituted a settlement offer under ER 408 (and also rejecting AIC's claim of work product privilege), the trial court ruled that AIC and Sound Transit could "figure out if you want to get into this history [of the first appraisals]. If one of you does, the other one can." Verbatim Report of Proceedings (VRP) (July 16, 2013) at 53-54. Accordingly, the trial court did not "grant[] this motion on either side." *Id.* at 55.

At trial, Sound Transit's appraisal expert, Murray Brackett, testified that the PGE was worth $113,169, the TCE was worth $61,503, and AIC was not entitled to severance damages. VRP (July 24, 2013) at 1072, 1094. AIC's appraisal expert, Scott Biethan, testified that the PGE was worth $210,000, the TCE was worth $32,124, and AIC was entitled to $1,457,000 for diminished value, totaling $1,699,124 in just compensation due. VRP (July 29, 2013) at 1502-03.

During its case in chief, Sound Transit called AIC president, Oh, to testify about the July 2012 valuation letter. Before doing so, Sound Transit inquired about possible avenues to introduce the letter into evidence. The court advised, "I think to get this document in you need to lay a foundation. I don't know how to be more clear than that. I don't read the case law as saying that apparent authority is enough to introduce a party admission. The whole policy of the rule here is it needs to be the party's statement . . . ." VRP (July 25, 2013) at 1190.

-6-

When Sound Transit began to question Oh about the contents of AIC's valuation letter, the trial court excused the jury to voir dire the witness:

> THE COURT: Was there a belief that you were entitled to $485,000 for just compensation?
> MS. OH: Whatever was in the appraisal and what the appraiser came up with with -
> THE COURT: Is that an accurate statement, Ms. Oh? Did you believe you're entitled to $485,000? When you said it in July, was that an accurate statement about what your belief was?
> MS. OH: My belief was whatever the appraiser said was -
> THE COURT: Yes. Focus on the letter and the date and tell me if this was your belief.
> MS. OH: Well, that was my belief from the information from the appraiser.
> THE COURT: Okay. Thank you. May I have this?
> MS. OH: Oh, sorry.
> THE COURT: I'm going to let you question her about this letter -
>
> . . . .
>
> THE COURT: . . . I do think it's clear that this is a statement of something that she believed at the time and you can bring it in as her party admission.

*Id.* at 1202-03.

AIC's counsel objected, arguing, "I don't think we meet the hearsay exception." *Id.* at 1203. The trial judge responded, "She just said that this was her belief at the time. That's not hearsay. It's her belief. Let's bring in our jury." *Id.*

Showing Oh AIC's July 2012 valuation letter, Sound Transit's counsel asked whether it was "[AIC's] and your belief, strong belief, that [AIC] was entitled to a total of $485,000 for just compensation?" *Id.* at 1205. When instructed by the trial judge to answer "yes or no," Oh responded, "Yes." *Id.* at 1205-06.

Sound Transit then moved to admit the AIC's valuation letter as an exhibit. The trial court denied the motion, stating, "You have her testimony." *Id.* at 1206. The cross-examination and redirect examination did not address Oh's testimony concerning the $485,000 valuation figure. In closing argument, AIC's counsel referred the jury back to Oh's testimony as well as an earlier valuation estimate by Sound Transit's appraiser, saying, "If you're going to hold Ms. Oh to her number, then you hold Mr. Brackett to his first number as well." VRP (July 30, 2013) at 1766.

At the close of trial, the jury awarded AIC $225,000 in just compensation for the two easements ($163,497 for the PGE and $61,503 for the TCE). The jury did not award diminished value damages. CP at 1000-04. AIC then filed a postverdict motion for attorney fees and costs under RCW 8.25.070(1)(a) and RCW 8.25.075(1)(b), arguing that when Sound Transit changed the size of the TCE and the durational language of the TCE, it either nullified the 30-day offer or abandoned the condemnation proceeding altogether. The trial court denied AIC's motion. AIC also moved for a new trial, which the trial court denied as untimely.

AIC appealed the judgment and the trial court's order denying its motion for a new trial. The Court of Appeals affirmed. *Cent. Puget Sound Reg'l Transit Auth. v. Airport Inv. Co.*, noted at 185 Wn. App. 1033, 2015 WL 321435 (2015). We accepted review. *Cent. Puget Sound Reg'l Transit Auth. v. Airport Inv. Co.*, 185 Wn.2d 1017 (2015).

-8-

ANALYSIS

This case presents two unrelated issues:

(1)     Whether AIC is statutorily entitled to attorney fees for going to trial on the just compensation issue because Sound Transit modified the TCE after it made its 30-day offer.

(2)     Whether the trial court erred by allowing Oh to be questioned about the taking valuation of a nontestifying expert contained in the July 2012 letter.

*Award of Fees under RCW 8.25.070(1)(a)*

The Washington State Constitution provides that "[n]o private property shall be taken or damaged for public or private use without just compensation having been first made." WASH. CONST. art. I, § 16. "Originally the determination of 'just compensation' was limited to an inquiry of the fair cash market value of the property involved." *State v. Roth*, 78 Wn.2d 711, 712, 479 P.2d 55 (1971). As "[t]he necessary expense of litigation often forced property owners to accept the condemnor's offer even though they felt it was not just compensation," the legislature in 1965 "enacted several statutory changes to rectify the situation."[5] *Id.*

---

[5] In 1965, the legislature enacted RCW 8.25.010 (requiring condemnor to serve on condemnee a written offer showing the amount of total compensation it will settle for 30 days before trial), RCW 8.25.020 (requiring condemnor to cover, in addition to the fair market value of the property, actual and reasonable expenditures incurred by the condemnee in the process of evaluating the condemnor's offer), former RCW 8.25.030 (repealed by LAWS OF 1971, Ex. Sess., ch. 240, § 22) (giving trial court discretion to award the condemnee reasonable attorney and expert witness fees if the condemnor abandons the proceedings after entry of an order of public use and necessity), and former RCW 8.25.040 (repealed by LAWS OF 1971, ch. 240, (requiring condemnor to pay a limited amount for the

Two years later, in 1967, the legislature "took further steps to attain a measure of equality between 'just compensation' and the condemnee's net compensation" by passing RCW 8.25.070. *Id.* at 713. RCW 8.25.070(1) governs the award of attorney fees, providing in pertinent part:

> [I]f a trial is held for the fixing of the amount of compensation to be awarded to the owner or party having an interest in the property being condemned, the court shall[6] award the condemnee reasonable attorney's fees and reasonable expert witness fees in the event of any of the following:
>
> (a) If condemnor fails to make any written offer in settlement to condemnee at least thirty days prior to commencement of said trial; or
>
> (b) If the judgment awarded as a result of the trial exceeds by ten percent or more the highest written offer in settlement . . . by condemnor in effect thirty days before the trial.

Relying on RCW 8.25.070(1)(a), AIC argues it is entitled to attorney fees because Sound Transit did not make a written offer for the precise interest in the property it ultimately condemned. Suppl. Br. by AIC at 5-6. Specifically, AIC contends that Sound Transit did not make an offer that matched the revised TCE. As a result, AIC complains it was prevented from having "the opportunity to receive and consider a settlement offer for the reduced taking and from evaluating Sound Transit's case as it would be presented to the jury." *Id.* at 2.

Statutory interpretation presents a legal question we review de novo. *State v. Costich*, 152 Wn.2d 463, 470, 98 P.3d 795 (2004). Our analysis of RCW 8.25.070 begins with the plain language employed by the legislature. *Id.* The plain meaning

---

actual reasonable expenses necessarily incurred by the condemnee in removing his [personal property] from the appropriated property).

[6] In 1971, the legislature amended RCW 8.25.070 to state that the court "shall" award fees instead of the court "may" award fees. LAWS OF 1971, EX. SESS., CH. 39, § 3.

of a statute may be discerned "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002). Our primary goal is to give effect to the legislature's intent, which we derive by construing the language as a whole, giving effect to every provision. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). If the language is unambiguous, we give effect to that language and that language alone because we presume the legislature says what it means and means what it says. *State v. Radan*, 143 Wn.2d 323, 330, 21 P.3d 255 (2001).

The trial court correctly denied AIC attorney fees under RCW 8.25.070(1)(a). This provision entitles a condemnee to attorney fees under RCW 8.25.070(1)(a) only if the condemnor fails to make *any written offer* in settlement at least 30 days before trial to fix compensation. Because it is undisputed that Sound Transit made a timely written settlement offer to AIC for $463,500, AIC's claim for attorney fees fails under the plain meaning of the statute. The text does not allow for an interpretation that vitiates the meaning of "any offer" when the scope of the taking is modified subsequent to the offer. AIC cannot invoke RCW 8.25.070(1)(a) for an award of attorney fees.

AIC contends that Sound Transit's settlement offer was effectively no offer at all because it was based on a different property interest than the one Sound Transit ultimately sought to condemn per the revised TCE. But this argument runs contrary to the overall statutory scheme: RCW 8.25.070(1)(a) awards attorney fees to the

condemnee only if condemnor fails to make "*any* written offer in settlement" of the condemnation action, anticipating ongoing attempts at settlement. (Emphasis added.) AIC's proposed interpretation renders the statute unworkable. It would prevent a condemnor from making any change to the property interests comprising the overall taking *any* time after the initial 30-day offer, at the risk of paying the condemnee's attorney's fees and expert witness fees (unless perhaps the condemnor is able to have the trial continued and submit a new offer for the modified taking). AIC had a full and fair opportunity to accept Sound Transit's settlement offer— which offer remained unchanged despite the reduced size and scope of the TCE.[7]

AIC worries that RCW 8.25.070(1)(a) will be subject to abuse—through gamesmanship or bad faith—if condemnors are allowed to modify the scope of a taking at trial after making a settlement offer. We find AIC's concerns misplaced. Our precedent requires a condemnor to present an adequate taking description to allow the landowner time to prepare for trial. *See In re Municipality of Metropolitan Seattle*, 67 Wn.2d 923, 928, 410 P.2d 790 (1966). Here, AIC has not shown that the modified TCE was inadequately described or otherwise resulted in prejudice to its trial preparations. Nor did AIC present evidence that Sound Transit committed bad

---

[7] AIC relies on *State v. Basin Development & Sales Co.*, 53 Wn.2d 201, 204-05, 332 P.2d 245 (1958), for the proposition that "'the burden is on the condemnor to present sufficient construction plans to understand the extent of the loss to the owner.'" Pet. for Review by AIC at 15 (quoting *Basin*, 53 Wn.2d at 204-05). But *Basin* is inapposite. In *Basin*, the trial court denied the condemnor's motion to stipulate to a new condemnation after the verdict had already been rendered. *Basin*, 53 Wn.2d at 204. Here, AIC had the opportunity to accept Sound Transit's unchanged settlement offer even after Sound Transit indicated there would be a downward modification of the TCE.

faith or engaged in gamesmanship in its settlement negotiations. Instead, the record discloses that Sound Transit reduced the scope of the TCE based on a changed understanding of its construction needs and to ameliorate AIC's concerns about decreased parking. Despite the scaled-back TCE, it kept the same settlement offer on the table until trial.

An additional statutory safeguard exists against the risk of gamesmanship and abuse from condemnors proffering unreasonable settlement offers to avoid paying fees. RCW 8.25.070(1)(b) separately awards fees to the condemnee when the condemnor's offer is less than 90 percent of the jury's just compensation verdict. In this case, the jury awarded AIC *more* compensation for the revised TCE than AIC's appraiser testified it was worth. CP at 1415. AIC suggests condemnors will have an incentive to make an inflated pretrial settlement offer based on a greater taking than ultimately sought at trial in order to avoid an award of fees under RCW 8.25.070(1)(b). Not only did AIC not rely on this provision in its fee motion, but the argument also overlooks the counterincentive a condemnor has to offer in settlement only that amount justified by the taking it actually needs. It is difficult to imagine that condemnors will generally be motivated to make artificially high settlement offers.

Alternatively, AIC argues that it is entitled to fees and costs under RCW 8.25.075(1)(b) because Sound Transit's change to the scope of the TCE constituted an abandonment of the condemnation proceedings altogether. Suppl. Br. by AIC at 6-7; *see* RCW 8.25.075(1)(b) (providing for reasonable attorney and expert witness

fees if "[t]he proceeding is abandoned by the condemnor"). AIC contends that Sound Transit abandoned its taking by modifying the TCE after its settlement offer and putting before the jury a different taking from the one for which it petitioned and obtained possession and actual use. Suppl. Br. by AIC at 6-7. In support of this argument, AIC cites to the TCE's reduction in square footage and duration of use. *Id.* at 9.

We find this argument unpersuasive. The very fact that the parties litigated to judgment over just compensation establishes that the proceeding was never abandoned. AIC advocates for a rule that would consider a condemnation proceeding to be abandoned whenever the taking "materially changes." But such a rule is contrary to established precedent holding that a proceeding is abandoned when the condemnor *never takes any property. See Port of Grays Harbor v. Citifor, Inc.*, 123 Wn.2d 610, 619, 869 P.2d 1018 (1994) (holding condemnor "clearly *abandoned* the condemnation proceedings" under RCW 8.25.075(1)(b) because it never acquired property).[8]

---

[8] In accord with Washington precedent, courts have narrowly construed "abandonment" in 42 U.S.C. § 4654(a)(2), the federal analog to RCW 8.25.075. *United States v. 122.00 Acres*, 856 F.2d 56 (8th Cir. 1988) (proceeding deemed abandoned when condemnor determined that the jury's determination of just compensation went beyond its budget capabilities and moved to dismiss the condemnation action all together); *United States v. 4.18 Acres*, 542 F.2d 786 (9th Cir. 1976) (condemnation proceeding not deemed abandoned when condemnee successfully moved to dismiss the action and rather than appeal the dismissal the condemnor proceeded to file a new condemnation action within one year of dismissal); *United States v. 431.60 Acres*, 355 F.Supp. 1093 (S.D. Ga. 1973) (government admitted to abandonment).

Even if we were inclined to adopt a new rule akin to *constructive* abandonment, the out-of-state authorities AIC relies on are distinguishable. *See* Appellant AIC's Opening Br. at 41 n.3. In those cases, the physical taking changed in size and scope. *See People ex rel. Dep't of Transp. v. N. Tr. Co.*, 376 N.E.2d 286, 287, 59 Ill. App. 3d 1053, 17 Ill. Dec. 287 (1978) (condemnor modified original physical taking of 312.5 square feet to 500 square feet, a 84 percent decrease); *County of Kern v. Galatas*, 200 Cal. App. 2d 353, 354-55, 19 Cal. Rptr. 348 (1962) (condemnor modified original physical taking of 75.49 acres to 48.87 acres, a 35 percent decrease); *Montgomery County v. McQuary*, 26 Ohio Misc. 239, 265 N.E.2d 812, 813 (1971) (condemnor "abandoned[ed] the course of the easements through the property of the defendant . . . and designate[d] a different course"); *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619 (Tex. 2008) (condemnor modified original physical taking of 47,008 square feet to 1,260 square feet, a 97 percent decrease). Here, in contrast, Sound Transit made no reduction to its permanent taking (the PGE); the only change was to reduce the area impacted by the TCE by 25 percent and to limit its duration to fewer nonconsecutive days of exclusive possession. Moreover, Sound Transit's settlement offer never changed despite the reduced TCE. The Court of Appeals properly rejected AIC's claim that it is entitled to attorney fees under RCW 8.25.075(1)(b).

*Admission of Oh's Testimony regarding the July 2012 Valuation*

AIC sought a new trial on the ground that the trial court erred by admitting Oh's testimony that she believed AIC was entitled to $485,000 for the easements.

-15-

Suppl. Br. by AIC at 13-14. AIC contends this testimony "was not admissible because it contained not Ms. Oh's own belief of value, but the belief of value of an expert who was not in court." *Id.* at 15. The trial court admitted the testimony under ER 801(d)(2).

We review a trial court's interpretation of an evidentiary rule de novo. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). Once the rule is correctly interpreted, the trial court's decision to admit or exclude the evidence is reviewed for an abuse of discretion. *Id.* A trial court abuses its discretion only if its decision is manifestly unreasonable or based on untenable grounds. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993).

A statement qualifies as an admission by a party opponent if the "statement is offered against a party and is (i) the party's own statement, in either an individual or a representative capacity or (ii) a statement of which the party has manifested an adoption or belief in its truth." ER 801(d)(2). Such an admission is not hearsay. *Id.*

The trial court properly admitted Oh's testimony. Before allowing Oh to be questioned about the July 2012 valuation letter, the trial judge asked Oh whether the letter reflected her belief that AIC was entitled to $485,000 for damages. She confirmed that it did and later repeated this belief in her testimony before the jury. There is no dispute that Oh, as AIC's president, was entitled to speak on AIC's behalf. Oh's statement regarding her belief as to the value in July of 2012 was clearly offered against AIC. And the fact that that the letter containing the $485,000 valuation was never admitted at trial is of no consequence. Admission of a statement

by a party opponent does not hinge on admitting documents corroborating the party opponent's statement. Because Oh manifested a belief in the truth of the $485,000 valuation, the trial court properly considered it to be her statement under ER 801(d)(2).

AIC nevertheless contends the trial court improperly admitted Oh's testimony because, as a lay witness, "[s]he never expressed any expertise or method by which she came to personally believe that the property was worth any particular amount. She expressly testified she solely relied on her appraiser." Suppl. Br. of AIC at 15. Her testimony, AIC argues, was used merely as a conduit to bring in the out-of-court valuation opinion of a nontestifying appraisal expert. *See SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 139 n.5, 331 P.3d 40 (2014) (rejecting admission of expert witnesses' valuation opinion put into evidence through party's testimony because the valuations "were based entirely on a consulting expert's valuation that 'constituted hearsay'" (quoting *SentinelC3, Inc. v. Hunt*, 176 Wn.2d 152, 162, 309 P.3d 582 (2013))). It is true that allowing Oh's testimony brought into evidence the fact of an earlier, lower appraisal obtained by AIC. The jury certainly understood that Oh's belief was based on this appraisal valuation.[9] CP at 952. But the trial court's voir dire of Oh revealed that she had adopted the valuation as her own belief, making it admissible as a statement of a party opponent. No requirement exists that

---

[9] During deliberations, the jury sent an inquiry to the judge, asking how to "consider the estimate from a third appraiser, who was briefly mentioned? We think that estimate was $485,000. Can we consider this as evidence or witness testimony?" CP at 952. The judge responded, "You may consider all the testimony and exhibits that were admitted into evidence, and assign it what weight you believe it is worth." *Id.* 953.

the party opponent must possess particular "expertise or method" in forming an opinion. ER 801(d)(2)(ii) requires only that the party "has manifested an adoption or belief in [the statement's] truth." The trial court properly rejected AIC's hearsay objection and admitted the evidence. AIC is not entitled to a new trial.

## CONCLUSION

We affirm the Court of Appeals. AIC is not entitled to attorney fees under RCW 8.25.070(1)(a) or (b), and the trial court properly allowed AIC's president to be questioned about the July 2012 valuation letter.

Stephens, J.

WE CONCUR:

Madsen, C.J.

González, J.

Owens, J.

Fairhurst, J.

Yu, J.

No. 91653-5

JOHNSON, J. (dissenting)—In this classic bait-and-switch case, Central Puget Sound Regional Transit Authority (Sound Transit) changed its condemnation claim during trial from what it told the property owner when the "settlement" offer was conveyed. No offer was ever "on the table" for property interest claimed during trial. The offer caused, if not compelled, the property owner to seek fair value for their property at trial, where Sound Transit essentially said, "Never mind, we do not need that much property, and therefore settlement should be for a lesser fair value for the condemned property interest." Torturing the statutory purpose, the majority denies the property owner fees and costs even though no offer was ever made for the property Sound Transit actually took. Under the statute as written, this "changing the rules after the game is played" is unsupportable, or should be. The majority's new rule encourages such gamesmanship. I dissent.

The majority incorrectly denies Airport Investment Company (AIC) its statutory entitlement to attorney fees. A straightforward reading of the statute

discloses that any "offer" must be *for* the "interest in the property being condemned." RCW 8.25.070(1)(a). The majority essentially rewrites this provision and untethers the "offer" from the "interest in the property being condemned," defying common sense and the most elementary of principles of statutory construction and contracts. Some relationship must exist between a condemnor's offer and what it is taking. This case arose because Sound Transit changed its claim *during trial*.

The majority erroneously concludes that because Sound Transit made "any" offer, no fee award is due under RCW 8.25.070(1).[1] Public policy, legislative intent and well-settled principles of statutory interpretation should mean that you cannot divorce the offer from the interest in the property by changing the claim after the "offer" was made and rejected. A straightforward application of the language of the statute requires that the "offer" be for the "interest in the property being condemned." No other reading makes sense.

The purpose of RCW 8.25.070 is to encourage condemnors to make fair offers, thus avoiding litigation and encouraging settlement before trial. *See State v.*

---

[1] "(1) Except as otherwise provided in subsection (3) of this section, if a trial is held for the fixing of the amount of compensation to be awarded to the owner or party having an *interest in the property being condemned*, the court shall award the condemnee reasonable attorney's fees and reasonable expert witness fees in the event of any of the following:

"(a) If condemnor fails to make *any written offer* in settlement to condemnee at least thirty days prior to commencement of said trial." (Emphasis added.)

2

*Costich*, 152 Wn.2d 463, 471, 98 P.3d 795 (2004). The majority at least

acknowledges that our precedent requires a condemnor to present an adequate

taking description *before trial* to allow the landowner time to prepare for trial.

Majority at 12 (citing *In re Municipality of Metropolitan Seattle*, 67 Wn.2d 923,

928, 410 P.2d 790 (1966) (*Kenmore Props.*)). It is true that a property owner

before trial has a "right to be adequately advised of the exact nature of the

proposed taking, so that he [or she] may evaluate the resultant damage." *Kenmore

Props.*, 67 Wn.2d at 927. However, the majority's reading of *Kenmore Properties*

ignores that the same reason why a property owner must be adequately informed of

the exact nature of the taking before trial underlies why he or she must be informed

of the exact nature of the taking when being given a settlement offer. It makes

sense that a condemnor must provide the property owner a description of the taking

to allow the landowner to make a decision to accept any offer and, if not, prepare

for trial.

For the property owner to determine if a settlement offer is fair—and

consequently whether to litigate the condemnation action—the property owner

must know what exactly Sound Transit is offering and what property interest

Sound Transit is taking in exchange for that offer. Any change to what Sound

Transit provides to the property owner makes the calculation impossible.

3

Engaging in what is essentially a statutory rewrite, the majority claims that AIC failed to demonstrate that the temporary construction easement (TCE) was inadequately described, or that the changed TCE "otherwise resulted in prejudice to its trial preparations," or that Sound Transit "committed bad faith or engaged in gamesmanship in its settlement negotiations." Majority at 12. Under the majority's view, evidently, all the statute requires is that any offer "comes close" to describing the property and, if so, the property owner must now prove some type of materiality or prejudice. Nowhere in the statute does it say this. What the statute says is that the offer match the property interest sought. In this case, at trial, both the physical footprint and the duration changed from that specified in the offer. Whether this change was or was not "material" to the property owner's decision can never be known with certainty. Nor should condemnation trials include this issue. One certainty is established: the property owner never had the decision to accept an offer never presented.

The majority offers no cases to support its rule that a court must somehow consider materiality of any changes. Unfortunately, the majority fails to explain how the property owner can prove "materiality"—by what standard or much else. Fortunately, the statute answers this question. The statute provides that the burden is on Sound Transit to make offers for what it wants. Any change voids the offer.

4

Even if it were, under the statute, appropriate to engage in such an inquiry, a taking reduced by both its physical footprint and a reduction in duration is a lesser taking. A lesser taking is material in relation to the evaluation of the offer of just compensation. Here, the original TCE allowed for exclusive use of up to 1,080 days; the new TCE narrowed that exclusive use to 160 days.[2] The changes included a 25 percent decrease in the area of the easement and a reduction of the duration by 2.5 years. Sound Transit presented an entirely different picture of the taking to the jury than its pretrial offer had specified. Under the majority's approach, a condemnor can overstate its taking at the beginning of condemnation proceedings and then present the jury with a lesser taking to insulate itself from having to pay a fee award. While this likely was not the deliberate strategy of Sound Transit, the majority seems to ignore the possibility and risk of gamesmanship and abuse from its result, which conflicts with the statutory purposes.

The majority claims RCW 8.25.070(1)(b)—which separately awards fees to the condemnee when the condemnor's offer is less than 90 percent of the jury's just compensation verdict—provides a safeguard against the risk this potential abuse. Majority at 13. For this ostensible safeguard to be triggered, the jury award

---

[2] The record does not disclose exactly when Sound Transit made this change. We can presume that trial preparations and discovery were complete and at the very least the appraisal was done.

5

must necessarily be greater than the pretrial offer, which will almost never be the case when the property interest is reduced. In other words, RCW 8.25.070(1)(b) protects the condemnee only when the condemnor has offered *less* than what the jury awards. In instances where the pretrial offer is based on a taking that is less than what the taking presented at trial—either by its duration or its physical amount or both as is the case here—then the jury award will never be less than the pretrial offer. Under the statute, this does not make sense. Apparently, no question in this case exists that had Sound Transit gone to trial on its original claim, the award would have been larger. Because of the difference, no comparison between the offer and the award can be done.

The statute was designed to protect property owners who receive unfair settlement offers from bearing the costs of pursuing just compensation. Conversely, the statute was also designed to protect Sound Transit from bearing the costs of litigation when a fair offer of settlement is made. The property owner has a choice to make. If it decides to litigate, the statute determines fairness by comparing what was offered before trial to what the jury awarded. That comparison is simple where the taking on which the initial offer was based is the same as the taking evaluated by the jury. It becomes impossible and meaningless to compare the pretrial offer to the jury award where the property interests are different.

6

Under the statute, an offer is inextricably linked to the property interest on which the offer is made. In this case, because the offer was for a different property interest than that sought at trial, it is simply void and AIC is statutorily entitled to recover its fees and costs. For these reasons, I dissent.

Johnson, J.

Gordon McCloud, J.

Wiggins, J.