# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| WASHINGTON CAPITAL MORTGAGE, INC., | No. 75017-8-I |
| Respondent, | DIVISION ONE |
| v. | |
| BRAVERN BUSINESSES, LLC, | UNPUBLISHED |
| Defendant, | FILED: March 6, 2017 |
| and | |
| EVAN BARIAULT, | |
| Appellant. | |

Cox, J. — Evan Bariault, the attorney for defendant Bravern Businesses LLC, appeals the trial court's order and judgment sanctioning him. Because the trial court did not abuse its discretion in any respect, we affirm.

Ernie Whitaker formed Bravern Businesses LLC. Bravern claims to have entered into a joint venture agreement with DLW General Contractors Inc. to conduct a home remodel of investment property located at 12607 14th Avenue South, Burien, Washington. DLW provided labor, services, and materials to this property in the claimed amounts exceeding $137,800. These amounts were unpaid by Bravern, the claimed owner of the property. DLW recorded a claim of lien against this property. Thereafter, DLW assigned its claim of lien to Washington Capital Mortgage Inc.

On September 19, 2014, Dean Kalivas delivered to the Washington Secretary of State a copy of the summons and complaint for this action. On September 23, 2014, the Secretary of State's office sent, by certified mail, a copy of the summons and complaint to the last known address of one authorized to accept service for Bravern. The certified letter was delivered in Bellevue, Washington on September 25, 2014.

On October 30, 2014, Washington Capital commenced this action to foreclose the lien against the property owned by Bravern. It also sought and obtained an order of default and a default judgment against Bravern.

Almost a year later, Bravern moved to vacate the judgment. It alleged improper service and that "the action was created through acts of fraud, deception[,] and forgery" under CR 60(b)(4). The trial court denied the motion and Bravern's motion for reconsideration.

The trial court also concluded that Bariault violated CR 11 and awarded a judgment against him in the amount of $3,875 as reasonable attorney fees for this violation.

Bariault appeals.

## SCOPE OF REVIEW

Bariault designates a number of orders in his notice of appeal. But his briefing is confined to the order and judgment imposing sanctions against him and the findings and conclusions supporting that order. Accordingly, we only consider these decisions of the trial court and consider appeal of the other matters abandoned.

2

## CR 11 SANCTIONS

Bariault argues the trial court abused its discretion in imposing CR 11 sanctions. We disagree.

Under CR 11(a), any attorney signing a filing certifies:

> that to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: *(1) it is well grounded in fact; [and] (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law* . . . . If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, *may* impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee.
> . . . .[1]

This rule requires that attorneys not submit "baseless" filings.[2] A filing is baseless when it is not "well grounded in fact" or "warranted by existing law or a good faith argument" for its alternation.[3] But the filing is not sanctionable merely because it is baseless. The trial court must also find that the filing attorney failed to "conduct a *reasonable inquiry* into [its] factual and legal bases."[4] Thus, CR 11 is "not intended to chill an attorney's enthusiasm or creativity in pursuing

---

[1] (Emphasis added.)

[2] Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 219, 829 P.2d 1099 (1992).

[3] CR 11.

[4] Bryant, 119 Wn.2d at 220.

factual or legal theories."[5] It also "is not meant to act as a fee shifting mechanism."[6] That the filing does not prevail is not dispositive.[7]

The party seeking CR 11 sanctions bears the burden to prove they are appropriate.[8]

Washington courts objectively consider the reasonableness of an attorney's inquiry.[9] Courts "should inquire whether a reasonable attorney in like circumstances could believe his or her actions to be factually and legally justified."[10] In making this determination, courts may consider "'the time that was available to the signer, the extent of the attorney's reliance upon the client for factual support, . . . the complexity of the factual and legal issues, and the need for discovery to develop factual circumstances underlying a claim.'"[11] But "[a]n attorney's 'blind reliance' on a client . . . will seldom constitute a reasonable inquiry."[12]

---

[5] Id. at 219.

[6] Biggs v. Vail, 124 Wn.2d 193, 197, 876 P.2d 448 (1994).

[7] Bryant, 119 Wn.2d at 220.

[8] Biggs, 124 Wn.2d at 202.

[9] Bryant, 119 Wn.2d at 220.

[10] Id.

[11] Id. at 220-21 (quoting Miller v. Badgley, 51 Wn. App. 285, 301-02, 753 P.2d 530, 539 (1988)).

[12] MacDonald v. Korum Ford, 80 Wn. App. 877, 890, 912 P.2d 1052 (1996) (some alteration in original) (quoting Badgley, 51 Wn. App. at 302).

We review for abuse of discretion the trial court's imposition of sanctions.[13] A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds.[14]

Since the trial court weighed the evidence, our review is limited to determining if substantial evidence supports the trial court's findings of fact.[15] If so, we then determine whether the findings support the conclusions of law and the judgment.[16] Substantial evidence is a quantum of evidence "sufficient to persuade a fair-minded person of the truth of the declared premise."[17]

*Baseless Filing*

Bariault argues that the trial court's findings regarding the allegations concerning the existence of a joint venture are erroneous. We disagree.

Bariault asserted in the motion to vacate the judgment that Bravern "entered into a Joint Venture Agreement . . . with DLW . . . ." In Finding of Fact 8, the trial court found that Bariault's assertion of the joint venture was baseless. It specifically found that Bariault "either knew or should have known that the

[13] Biggs, 124 Wn.2d at 197.

[14] Cent. Puget Sound Reg'l Transit Auth. v. Airport Inv. Co., 186 Wn.2d 336, 350, 376 P.3d 372 (2016).

[15] Wixom v. Wixom, 190 Wn. App. 719, 724, 360 P.3d 960 (2015), review denied, 185 Wn.2d 1028 (2016).

[16] Id.

[17] In re Det. of H.N., 188 Wn. App. 744, 762, 355 P.3d 294 (2015), review denied, 185 Wn.2d 1005 (2016).

purported joint venture agreement between DLW and Bravern did not exist or that if it did exist, that it was not signed by both parties . . . ."

Carlos Gonzalez's and Geri McNeil's declarations provide substantial evidence to support the trial court's finding.

McNeil, DLW's president, testified by declaration that he never met or spoke "with anyone who identified himself as Ernie Whitaker; and that DLW . . . never had any business dealings with the Bravern Businesses LLC." Gonzalez, Whitaker's actual joint venture partner, also testified by declaration, stating he "never once heard [Whitaker] refer to DLW or to the fact that he had entered into any business arrangement with DLW." Given Gonzalez's "working relationship with DLW . . . , [he] d[id] not believe DLW had any type of business arrangement with Whitaker or Bravern."

The trial court also found that Bariault failed to reasonably inquire into the factual basis of this assertion. It specifically found: "in the exercise of reasonable investigative effort[,] he should have ascertained the joint venture [agreement] was not signed before asserting it in pleadings and alluded to it as being an enforceable agreement." Substantial evidence supports this finding.

Although Bariault claims "[i]t is unclear what further inquiry [he] could have undertaken," he could have determined from DLW representatives whether DLW entered into a joint venture with Whitaker. Bariault claims he "conducted an information search regarding Dean Kalivas [DLW's director/secretary], . . . Debra Wilson [DLW's registered agent and treasurer,] [and] Geri McNeil [DLW's president]." But the record fails to show he attempted to communicate with any

of these individuals or their attorneys to ascertain whether DLW entered into a joint venture with Whitaker.

In sum, the record shows that Bariault blindly relied on Whitaker's assertion of the existence of a joint venture with DLW and the unsigned agreement that Whitaker provided. This was an insufficient inquiry.

Substantial evidence supports the trial court's findings, and these findings support the trial court's conclusion that Bariault's allegations were baseless.

There is no substantial dispute whether existing law would have supported a properly supported allegation. But, on this record, the allegations were not properly investigated prefiling. The court correctly concluded that this "constitute[d] CR 11 violations." On this basis alone, sanctions were properly imposed.

Bariault argues that the trial court's findings are erroneous because his "prefiling investigation was reasonable and supported a view that the [joint venture] existed." Bariault relies on the following statements in his brief to support this argument:

> 1. Whitaker testified under oath that [Bravern] entered in to a joint venture with DLW and informed defense counsel of the same.
> 2. Whitaker provided defense counsel with an unsigned copy [of the alleged joint venture agreement] [and] stat[ed] he never received a final signed copy and thus did not possess one.
> 3. Whitaker informed defense counsel that he signed the joint venture agreements around March 2014. The joint venture [agreement] lists a date of March 25, 2014.
> 4. The unsigned DLW [joint venture agreement] provides that DLW was required to provide all capital and labor. Plaintiff's complaint admits that DLW did just that. . . . There was no evidence of a standard construction contract between DLW and [Bravern], no evidence of periodic invoicing by DLW, and accordingly no basis to believe that DLW's performance was

7

anything other than pursuant to a joint venture with DLW providing precisely the service referenced in the alleged joint venture.[18]

These statements demonstrate Bariault's reliance on Whitaker's assertion of a joint venture with DLW and an unsigned copy of the joint venture agreement provided by Whitaker. But "[a]n attorney's 'blind reliance' on a client . . . will seldom constitute a reasonable inquiry."[19] Thus, this argument is unpersuasive.

Bariault also argues that the trial court improperly based its findings "upon a determination of Whitaker's credibility." Bariault correctly states that "it is improper to impose sanctions on an attorney based solely on the ultimate determination of his client's credibility."[20] But the record does not show that the court imposed these sanctions solely on this basis. Rather, the trial court found that Bariault failed to reasonably inquire into the factual basis of his assertion.

### Fraud

Bariault also argues that the trial court's findings regarding the fraud allegation are erroneous. We again disagree.

Finding of Fact 9 provided the trial court's reason for imposing sanctions. The trial court found that Bariault's fraud claim under CR 60(b)(4) was baseless. According to the court, he "failed to allege a single fact demonstrating fraud in how [Washington Capital] obtained its default judgment." Substantial evidence supports this finding. Nothing in either the motion or the attached exhibits

---

[18] Appellant's Opening Brief at 34.

[19] MacDonald, 80 Wn. App. at 890 (some alteration in original) (quoting Badgley, 51 Wn. App. at 302).

[20] Saldivar v. Momah, 145 Wn. App. 365, 403, 186 P.3d 1117 (2008).

8

describes how Washington Capital engaged in fraud to obtain the default judgment. Bariault did not explain this in the briefing on this matter.

Bariault argues that the motion was "premised upon plaintiff's effort to [serve] process through the secretary of state pursuant to a false declaration submitted by Kalivas." Bariault also argues that "[t]he facts surrounding the Kalivas declaration supported an objective belief that [the] judgment was obtained through fraud. This fraudulent conduct caused the entry of the judgment without proper notice . . . ."

This argument has no merit. The motion did not mention Kalivas's declaration regarding service of process. Bariault's brief even explains that he "made the tactical decision" not to mention the declaration in the motion.

In Finding of Fact 10, the trial court determined that Bariault made another baseless claim. It specifically found that he "failed to make reasonable inquiry into the required legal elements of his motion under CR 60(b)(4)." CR 60(b)(4) provides that "the court may relieve a party . . . from a final judgment, order, or proceeding for [f]raud . . . , misrepresentation or other misconduct of an adverse party."

The motion to set aside the default judgment states, in part, that "Washington Capital was involved in an elaborate fraud that resulted in multiple judgments being entered against [Bravern]." But there is nothing in the motion that explains this assertion. Specifically, there is no reference to the nine elements of fraud. And there is no explanation of what evidence supports any of these elements.

Additionally, Bariault's failure to explain the alleged "elaborate fraud" and his failure to explain the evidence to support the nine elements of fraud demonstrates his failure to reasonably inquire into factual and legal bases for this claim. Substantial evidence supports this finding.

We also note that Bariault does not assign error to Finding of Fact 17, which states:

> On October 12, 2015, and November 1, 2015, Huguenin (one of plaintiff's co-counsel) advised defense counsel of these violations. However, neither Bravern nor defense counsel modified their position with respect to the issues contained in the warning letters of plaintiff's counsel (Huguenin). Instead, defense counsel and Bravern proceeded with their faulty and improper assertions and declarations in direct violation of CR 11.[21]

Because Bariault does not challenge this finding of fact, it is a verity on appeal.[22]

*Improper Service*

Lastly, Bariault argues that substantial evidence does not support the trial court's findings of fact regarding the improper service allegation. We disagree.

This argument and the findings of fact at issue focus on one of Bariault's declarations. On December 2, 2015, Bravern filed a reply to its motion for reconsideration of the trial court's order denying the motion to vacate the judgment. That same day, Bariault filed his declaration, testifying he contacted the Unites States Postal Service to inquire about the tracking number and the mailing for the summons and complaint. He testified that the signature receipt

---

[21] Clerk's Papers at 1159.

[22] See Mueller v. Wells, 185 Wn.2d 1, 9, 367 P.3d 580 (2016).

contained a signature by "'C. Williams'" and that the address listed contained suite number 2104, rather than Bravern's suite number 2205. Thus, Bariault testified that the summons and complaint were "delivered to the wrong address and [Bravern's] registered agent never received [them] via certified mail . . . ."

In Finding of Fact 21, the trial court determined that Bariault "averred that Whitaker had not been served with process by the Secretary of State." Finding of Fact 22 states:

> Defense counsel failed to inquire of witnesses propounded in Response to Reconsideration, viz. of Woodley, Beeby, Saffarini. Adequate factual inquiry would have disclosed the compelling evidence that the Secretary of State had properly served Whitaker, with the Summons and Complaint in this case via certified mail. A reasonable factual investigation by defense counsel would have been inconsistent with defense counsel's assertion in his 12/2/15 declaration that service of the Summons and Complaint was sent to the wrong address. Defense counsel's failure to interview the above-named witnesses constituted an inadequate and unreasonable factual investigation and therefore, supports a continuing pattern of misconduct in this case. These violations are sanctionable under CR 11.[23]

Substantial evidence supports these findings despite the misstatement about the witnesses' named in the response to the reconsideration motion. Out of the three above named witnesses, only Shelly Woodley was identified "in response to Reconsideration." Washington Capital did not mention the "Saffarini" witness until two days after Bariault filed his declaration. And this witness's declaration was not filed until two days after Bariault filed his declaration.

Nevertheless, the record shows that Bariault knew of Kathleen Beeby prior to his filing of this declaration. Beeby is the senior community manager at the

---

[23] Clerk's Papers at 1160.

Bravern Signature Residences, where Whitaker's personal and business suite is located. Bariault even obtained a declaration from Beeby in October 2015, prior to filing his motion for reconsideration. However, that declaration explains how occupants obtain access to the residences; it does not explain the procedure for receiving its residents' certified mail. Thus, the record does not show that Bariault reasonably inquired about Bravern Signature Residences' certified mail procedure and whether any of its residents, particularly Whitaker, received any certified mail on September 25, 2014.

Additionally, the record does not show that Bariault attempted to communicate with Woodley after receiving notice of this witness in Washington Capital's response. Woodley, a customer service supervisor at the Office of the Washington Secretary of State (OSOS), "handle[s] all requests for service of process" on businesses registered with the OSOS. Woodley explained the process for accepting service and confirmed that the certified letter in this case was delivered on September 25, 2014 in Bellevue, the city where the Bravern Signature Residences are located. Similarly to Beeby, the record does not show that Bariault attempted to communicate with Woodley to inquire about the service procedure or possible service on Whitaker.

More importantly, the record does not show that Bariault attempted communication with "'C. Williams,'" whom he listed in his declaration. Thus, the record shows that Bariault failed to inquire about this person's signature on the signature receipt and the possible service on Whitaker despite the incorrect suite number listed on the receipt.

These facts demonstrate that Bariault failed to reasonably inquire to determine whether the OSOS had properly served Whitaker with the summons and complaint by certified mail. Accordingly, he made no reasonable inquiry into the facts to support his testimony that the summons and complaint were "delivered to the wrong address and [Bravern's] registered agent never received [them] via certified mail . . . ."

Further, the record demonstrates that Bariault's assertion was baseless. The record does not show he verified that the summons and complaint were delivered to the wrong address and that Whitaker did not receive them. Bariault just makes this assumption based on the incorrect suite number listed on the signature receipt.

Substantial evidence supports the trial court's finding. This finding supports the trial court's conclusion that Bariault's actions "constitute[d] CR 11 violations."

Bariault argues that contacting Woodley would have been "futile" because she testified that the OSOS does not utilize return receipt cards as evidence of the service of process. He chose to contact the United States Postal Service instead, which he claims was "the most sensible, reasonable[,] and diligent approach."

This argument is unpersuasive. Even if a reasonable attorney in like circumstances believed contacting Woodley would be futile, Bariault fails to explain why he did not attempt to communicate with "'C. Williams.'" He also fails to explain the lack of evidence in the record showing a reasonable inquiry of

13

Beeby about the certified mail procedure and whether any of the residents of Bravern Signature Residences, especially Whitaker, received any certified mail on September 25, 2014. Thus, his reliance on Whitaker's testimony, and his inquiry into the postal service, fails to demonstrate a reasonable inquiry into the factual basis of his declaration.

### Evidentiary Hearing

Bariault argues that the trial court abused its discretion by failing to conduct an evidentiary hearing. We disagree.

Trial courts have discretion to conduct evidentiary hearings if needed to "make a just determination of the outcome" of an issue raised by motion.[24]

Here, in the motion's statement of facts, Bariault asserted that Bravern "entered into a Joint Venture Agreement . . . with DLW . . . ." The motion also states that DLW filed a construction lien against Bravern, "its venture partner."

In Finding of Fact 8, the trial court determined that Bariault:

> either knew or should have known that the purported joint venture agreement between DLW and Bravern did not exist or that if it did exist, that it was not signed by both parties or in the exercise of reasonable investigative effort he should have ascertained the joint venture [agreement] was not signed before asserting it in pleadings and alluded to it as being an enforceable agreement. [Bariault's] failure to undertake reasonable investigative steps before pleading this critical fact has never been answered by counsel.[25]

The court further determined: "This failure to reasonably investigate the existence of a signed joint venture [agreement] in an attempt to overturn

---

[24] See Northwick v. Long, 192 Wn. App. 256, 267, 364 P.3d 1067 (2015).

[25] Clerk's Papers at 1158.

Plaintiff's default judgment upon an improper legal theory is sanctionable under CR 11."

Bariault argues that the trial court "impermissibly resolved an immaterial disputed fact without an evidentiary hearing and then inexplicably awarded sanctions . . . ." It appears the "immaterial disputed fact" in this argument is the joint venture's existence. He further argues that the trial court, without any discovery, "perfunctorily held that no joint venture existed in spite of or by ignoring substantial evidence to the contrary."

Although the trial court could have conducted an evidentiary hearing to determine whether Whitaker entered into a joint venture with DLW, the court had discretion not to do so. Whitaker testified by declaration that Bravern "entered into a joint venture agreement with DLW . . . ." As previously stated, McNeil, DLW's president, testified by declaration that he never met or spoke "with anyone who identified himself as Ernie Whitaker; and that DLW . . . never had any business dealings with the Bravern Businesses LLC." Gonzalez, Whitaker's actual joint venture partner, also testified by declaration, stating he "never once heard [Whitaker] refer to DLW or to the fact that he had entered into any business arrangement with DLW." Given Gonzalez's "working relationship with DLW . . . , [he] d[id] not believe DLW had any type of business arrangement with Whitaker or Bravern."

Bariault fails to show why the trial court needed an evidentiary hearing to evaluate the witnesses' credibility in order to determine whether the joint venture existed. Further, Bariault did not request an evidentiary hearing until after the

15

trial court ruled against Bravern. The motion even states: "[A]n evidentiary hearing is not required."

In sum, an evidentiary hearing was not required to resolve the matters in dispute. The trial court was not required to conduct such a hearing under the circumstances of this case.

We affirm the order and judgment imposing sanctions.

_____Cox, J._____

WE CONCUR:

_____Dwyer, J_____          _____Becker, J._____